## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DISTRICT

| | |
|---|---|
| **LAURA BECHTEL,**<br>on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**FITNESS EQUIPMENT SERVICES, LLC, dba SOLE FITNESS,**<br>Defendant. | Case No.<br><br>**PROPOSED CLASS ACTION**<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

The allegations made in this Complaint are based upon information and belief except those allegations that pertain to Plaintiff, which are based on personal knowledge. Each allegation either has evidentiary support or, alternatively, pursuant to Rule 11(b)(3) of the *Federal Rules of Civil Procedure*, is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

### INTRODUCTION

1. Plaintiff Laura Bechtel ("Plaintiff") brings this proposed class action on behalf of herself and similarly-situated purchasers of Fitness Equipment Services, LLC dba SOLE Fitness ("SOLE" or "Defendant") treadmills, challenging the conduct of SOLE in the advertising,

marketing, and sale of its personal fitness treadmills (the "Treadmills"),[1] which are developed, manufactured, marketed and sold for household use. The Treadmills are incapable of reaching and maintaining SOLE's overstated and inflated continuous horsepower representations during normal designed household exercise use. Plaintiff seeks damages and equitable relief on behalf of herself and all others similarly situated.

2.      The treadmill motor horsepower rating can be one of the most prevalent and recognized specifications a consumer has to compare when purchasing a treadmill. The horsepower delivered by the motor directly affects the quality of the treadmill's performance and a reasonable consumer's purchasing decision. SOLE has deceitfully "out-spec'ed" its competition with false and misleading horsepower ratings intended to lure consumers into purchasing its treadmills and paying an inflated price based on the horsepower misrepresentations.

3.      SOLE misleads consumers into believing that the Treadmills can generate and maintain the represented continuous horsepower, even though in fact the horsepower misrepresentations can never be obtained during actual household use by the Plaintiff and consumer Class members. SOLE manufactures,[2] develops, markets, distributes, and sells a variety of treadmill models throughout the country, including the Treadmills Plaintiff and Class members have purchased. SOLE charges a premium for the Treadmills based on the misrepresented continuous horsepower capabilities available during household usage. SOLE represents on its website (www.soletreadmills.com), marketing materials, and in store displays at Dick's Sporting

---

[1] SOLE markets and sells multiple treadmill models, including the Sole F63 (3.00 Continuous Horsepower ("CHP")), Sole F65 (3.25 CHP), Sole S77 (4.00 CHP), Sole F80 (3.50 CHP), Sole F85 (4.00 CHP), Sole TT8 (4.00 CHP), Sole TT9 (4.00 CPH) and the Sole TD80 (2.5 CHP) and discontinued models Sole F60 (2.75 CHP), Sole S73 (3.00 CHP), and the Sole F83 (3.25 CHP).
[2] SOLE partners with Dyaco International Inc., a Taiwanese multinational company, which manufactures SOLE's treadmills in Taiwan and China.

Goods ("Dick's") that the Treadmills have a specific power output, quantified in continuous horsepower ("CHP"), that they cannot produce during household usage.

4.     SOLE began by selling its fitness brands to hotels after landing a contract in 2003 to provide SOLE treadmills to 150 Hilton Hotels.

5.     SOLE has shifted its focus in recent years to the home consumer market, selling its exercise equipment products online and through a sales and distribution partnership with Dick's, the nation's largest sporting goods retailer. SOLE treadmills are prominently displayed and sold at most of Dick's approximately 730 retail sporting good stores located throughout the United States.

6.     SOLE distinguishes its home fitness equipment from competitors as high-end fitness equipment at affordable prices available to consumers for household use. SOLE claims to be providing the same quality in its home fitness equipment that can be found in commercial hotel gyms around the world.

7.     SOLE touts that its treadmills are "engineered for durability. The machine's sturdy frame and wide deck will allow you to move freely during your run. SOLE treadmills are also **constructed with high-powered motors that deliver a strong output and performance during your workout**."[3]

8.     SOLE advertises and markets that its treadmills operate at a continuous horsepower of 2.5 to 4.00 CHP range, depending on the specific model. The pricing increase for specific models is in direct relationship to the advertised CHP misrepresentations.

9.     SOLE labels the Treadmills with false and misleading horsepower ratings because such representations are highly material to consumers and serve to differentiate the Treadmills

---

[3] *See* Expert Advice, https://www.dickssportinggoods.com/products/sole-treadmills.jsp (last accessed Aug. 15, 2019) (emphasis added).

from the competition.    Reasonable consumers expect to receive the horsepower SOLE claims its Treadmills maintain, but instead, Plaintiff and Class members only receive a small fraction of the horsepower promised by Defendant while exercising.

10.    SOLE's continuous horsepower representations are inaccurate, misleading, and materially overstate the Treadmills' true operating horsepower. Indeed, it is not possible for these Treadmills to operate at a continuous horsepower of 4.0 or even 2.5 continuous horsepower when plugged into a standard 120-volt, 15-amp outlet found in residential homes in the United States.

11.    In fact, based on the specific warning provided in the SOLE Owner's Manual, SOLE warns that to "reduce the risk of burns, fire, electrical shock, or injury to persons, install the treadmill on a flat level surface with access to a 110-volt, 15-amp grounded outlet with only the treadmill plugged into the circuit."[4] The Treadmills are rated for "use on a nominal 110-volt circuit."[5]

12.    SOLE recognizes that consumers view a treadmill's power as an important characteristic in making a treadmill purchaser for their home. SOLE specifically highlights claims about the Treadmills' horsepower in its advertising, on its website, in its press releases, and at its point of sale marketing materials prominently displayed at Dick's stores and online by third-party retailers like Amazon.

13.    SOLE's false and overstated horsepower representations are designed to mislead consumers into believing the Treadmills have much more power than they actually have, leading to consumers overpaying for Treadmills and/or causing consumers to purchase the Treadmills instead of competitor manufacturers' treadmills or less expensive models.

---

[4]http://www.servicedocuments.com/pdfs/_0005_SOLE/_0005_SOLE_01_Treadmills/003_OwnersManuals/2020_SOLE/F80-Ver.B.pdf , at 2 (last accessed August 28, 2019).
[5] Id.

14. Reasonable consumers like Plaintiff expect the Treadmills to produce the represented horsepower stated in and on SOLE's marketing materials, website, and/or retail store displays, during household operation, and would not have purchased the Treadmills or would have paid less had they known that SOLE's representations regarding the Treadmills' continuous horsepower were misleading. SOLE's Treadmills are worth substantially less than what Plaintiff and Class members paid to purchase them.

15. Plaintiff suffered damages resulting from SOLE's actions and omissions. Accordingly, Plaintiff brings this class action asserting claims against SOLE for violations of consumer protection and false advertising statutes, breaches of express and implied warranties, negligent misrepresentations and unjust enrichment.

## JURISDICTION

16. This Court has jurisdiction over this action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because SOLE is incorporated as a Utah corporation and upon information and belief all of the Treadmills are manufactured by Dyaco International, Inc., a Taiwanese company, with its headquarters in Taipei, Taiwan. SOLE is a citizen of the State of Utah; Plaintiff is a citizen of, and purchased a Treadmill within, the State of Ohio; there are more than 100 Class members in many different states; and the aggregate amount in controversy exceeds $5 million.

17. Venue is proper in this Court because SOLE has distributed, advertised and sold Treadmills in this District, including the Treadmill Plaintiff purchased, and Plaintiff reviewed and evaluated SOLE's continuous horsepower representation and eventually purchased her SOLE treadmill in this District. Furthermore, SOLE Treadmills are available to purchase from Dick's

Sporting Goods stores throughout this District, including store locations in Western Hills, Colerain, Kenwood, Mason, and Eastgate.

## PARTIES

18.     Plaintiff Laura Bechtel purchased a SOLE F80 treadmill online on SOLE's website in July 2018 for the purpose of using the treadmill for personal use in the basement of her home located in Cincinnati, Ohio. After purchasing her F80 treadmill, Plaintiff has used her treadmill for ordinary use within her home and has not received the continuous horsepower that SOLE represents.

19.     Plaintiff reviewed SOLE's statements that the F80 treadmill was capable of producing 3.5 CHP when she was comparing the F80 treadmill to other treadmill manufacturers, such as NordicTrack.  But for SOLE's representations and marketing stating that the F80 treadmill produced 3.5 CHP, Plaintiff would not have purchased her SOLE F80 treadmill.

20.     Plaintiff paid approximately $1,500.00 for her SOLE F80 treadmill in July 2018.

21.     SOLE is a Utah corporation headquartered in Salt Lake City, Utah. SOLE develops, markets and sells fitness equipment for residential use, including treadmills, elliptical, bikes and rowers.  SOLE has been in the business of developing, marketing and selling exercise equipment throughout North America in interstate commerce since 2002 and continues to expand its presence in the US and internationally.

## STATEMENT OF FACTS

### Horsepower Overview

22.     Horsepower is a unit of measurement used to quantify the mechanical power output of a motor or an engine.

23.    The "horsepower" measurement of power was adopted in the late 18th century by Scottish engineer James Watts to compare the output of steam engines with the power of draft horses. In describing electric power under the metric system, the term "watt" is now commonly used instead of horsepower as a measure of mechanical power output performed by an electrical motor. One unit of horsepower is equal to approximately 746 watts.

24.    The amount of mechanical power output generated by any given electrical motor can be determined by examining that electrical voltage available to it and the amperage that the motor is capable of drawing. To calculate an electrical motor's operating horsepower, voltage is multiplied by amperage and then by a fraction representing the efficiency of the motor. That total is then dividing by 746 watts to convert the watts to horsepower.

25.    A simple equation thus describes how to calculate horsepower by multiplying the available voltage, amperage draw, and motor efficiency, and dividing that product by 746 (to convert into horsepower as measured by wattage):

$$\frac{\textbf{(Voltage)} \text{ x } \textbf{(Amperage)} \text{ x } \textbf{(Motor Efficiency)}}{\textbf{746}} = \textbf{HP}$$

26.    Most electrical outlets in American homes are the standard 15-amp variety, with two slots and a U-shaped grounding third hole and have an accompanying 120-volt circuit. A 15-amp circuit is usually served by 14-gauge wire and is protected by a 15-amp circuit breaker or fuse based on building and electrical codes.

27.    SOLE's Treadmills are rated at 15 amps with a 110-volt circuit, which equates to a theoretical maximum output power of 1,650 watts or 2.21 horsepower without taking into

consideration the motor's efficiency[6] or power factor. Heat and other factors also decrease the efficiency, which would further decrease the power output of the motor nearly fifty-percent (50%).

28.     After factoring the effects of the power factor and efficiency loss, SOLE's Treadmills are capable of providing a mere fraction of the advertised continuous horsepower that SOLE markets its Treadmills are capable of providing while in household use.

29.     It is beyond the safety rating for an electrical device to draw more power than the receptacle and household electrical circuit is designed for. If an electrical device does draw more power than the household electrical circuit is designed for, the circuit-breaker will flip and cut off power to that circuit. As such, SOLE treadmills are incapable of drawing more power than a household outlet is capable of providing during actual household use.

30.     SOLE's horsepower representations seem to defy the laws of physics and allow SOLE's Treadmills to output more continuous horsepower than is actually capable of being input from a common household outlet power source in the United States and for which the Treadmills are rated.  Based on SOLE's misleading horsepower representations, Defendant's Treadmills allegedly output more power than the actual energy input from a household outlet receptacle.

31.     SOLE markets and sells the Treadmills as maintaining a certain "continuous horsepower," or "continuous duty horsepower."  CHP can be defined as a measurement of the motor's ability to maintain and continuously produce power over an extended period of time without exceeding the current rating of the motor.

32.     CHP is often considered to be the most accurate indicator of a motor's power output because it is performed at the voltage used in application and operation by the motor. The continuous horsepower associated with a particular treadmill is meant to define **"how much power**

---

[6] Electric motor efficiency is the measure of the ability of an electric motor to convert electrical energy to mechanical energy.

is maintained throughout the workout."[7] Additional industry experts have made clear that a "**continuous duty motor measures the minimum horsepower delivered at all points during a workout**."[8]

33. The continuous horsepower associated with a treadmill is the "**measure of sustained power during regular use**. The continuous motor power is what is consistently delivered during heavy usage over an extended period of time."[9]

34. The advertised continuous horsepower associated with SOLE's Treadmills are not true unless the motor is capable of maintaining the stated horsepower rating at all times during the consumer's workout. SOLE's Treadmills are not capable of maintaining the advertised continuous horsepower at all times during a consumer's workout.

35. In order for SOLE to even come close to achieving the misrepresented horsepower capabilities of its Treadmills, SOLE bases its horsepower advertising on an inflated laboratory testing power draw (input) not achievable in household use. The laboratory testing power input far exceeds the current rating of the Treadmill motors while in household use, and thus cannot be truthfully represented, by definition, as the Treadmills' continuous horsepower capabilities.

36. SOLE bases its misrepresentations on exaggerated laboratory testing amperage draw, not available in household use, to claim that its Treadmills possess the inflated continuous horsepower capabilities. For example, the motor used in a Sole F80 Treadmill which Defendant claims to possess 3.5 continuous horsepower is based on a power draw of 29 Amps, well beyond what is capable during household use as displayed in picture below:

---

[7] https://www.treadmillreviews.net/treadmill-motors-what-you-need-to-know/ (emphasis added) (last accessed Aug. 21, 2019).
[8] https://blog.johnsonfitness.com/blog/treadmill_drive_motors_and_the_question_of_horsepower/ (last accessed Aug. 20, 2019).
[9] https://treadmill-ratings-reviews.com/treadmill-articles/facts-about-treadmill-motors/ (last accessed Aug. 20, 2019).



:

37.     SOLE's advertised continuous horsepower is not a useful metric for a consumer to evaluate unless the motor is actually capable of attaining the continuous horsepower in actual use and under standard operating conditions.  A reasonable consumer is led to believe that the continuous horsepower representations are actually achievable while in normal exercise use based on SOLE's horsepower misrepresentations.

**SOLE's Horsepower Misrepresentations and Misleading Statements**

38.     SOLE promotes its high-powered treadmills as "the standard for home workout equipment.  Long-lasting with a powerful motor, and a cushioned deck your knees will love."[10]

39.     SOLE contends that "SOLE will never compromise their integrity to improve the bottom line, no exceptions."[11]  SOLE further states that this "is why we stand behind our products with a warranty that sets the standard for everyone else to follow."[12]

---

[10] https://www.soletreadmills.com/treadmills/f80-sole-treadmill (last accessed Aug. 29, 2019).
[11] https://www.soletreadmills.com/about.html (last accessed Aug. 29, 2019).
[12] *Id.*

40. SOLE touts that its Treadmills are the "[t]op rated treadmills according to over 15 different fitness websites and magazines." It further advertises that it has a "High Powered Motor That Can Do It All."[13]

41. As SOLE knew would happen, the fitness market has parroted the misleading horsepower representations, which has allowed for reviews that state that the SOLE Fitness F80 treadmill "is equipped with a 3.5 CHP motor, which is actually more powerful than your average treadmill motor…[] With such a powerful motor, it is great that the F80 does not make as much noise as you might expect."[14]

42. Each of SOLE's treadmill models prominently displays in its "Specs"[15] and advertising materials with the associated misrepresented horsepower rating:

- "**2.5 continuous duty horsepower** motor guarantees speeds from .5 mph to 4 mph" (SOLE TD80 Desk);
- "**2.75 continuous duty horsepower** motor guarantees speeds from .5 mph to 12 mph" (SOLE F600) – Discontinued Model;
- "**3.0 continuous duty horsepower** motor provides a range of speeds including the challenging 12 mph top speed" (SOLE F63);
- "**3.0 continuous duty horsepower** motor provides a range of speeds including the challenging 12 mph top speed" (SOLE S73) – Discontinued Model;
- "**3.25 continuous duty horsepower** motor provides speeds from .5 mph to the challenging 12 mph" (SOLE 65);
- "**3.25 continuous duty horsepower** motor provides speeds from .5 mph to the challenging 12 mph" (SOLE F83) – Discontinued Model;
- "**3.5 continuous duty horsepower** motor guarantees speeds from .5 mph to the challenging 12 mph" (SOLE F80);
- "**4.0 continuous horsepower** motor provides speeds from .5 mph to the challenging 12 mph" (SOLE F85);
- "Dual motors including a **4.0 continuous horsepower** motor provide the right amount of power, with up to 12 mph speed along with multiple levels of incline and decline" (SOLE TT8);
- "**4.0 continuous horsepower** motor provides speeds from .5 mph up to the challenging 12 mph" (S77);

---

[13] https://www.soletreadmills.com/treadmills/f80-sole-treadmill (last accessed Aug. 29, 2019).

[14] https://www.treadmillreviewguru.com/sole-f80-treadmill-review/ (last accessed Aug. 20, 2019).

[15] https://www.soletreadmills.com/treadmills.html (last accessed Aug. 20, 2019).

- "Commercial grade **4.0 continuous duty horsepower** motor provides a range of speeds including the challenging 12 mph top speed" (SOLE TT9);

43.     In addition to SOLE's online advertising horsepower misrepresentations, SOLE's in-store floor model displays across the country at Dick's Sporting Goods prominently exhibit SOLE's horsepower as a major selling feature listed at the top of the specifications (picture taken at Dick's Sporting Goods, Richfield, MN, August 11, 2019).

 

44.     In direct correlation to the misrepresented horsepower and the various treadmill models that SOLE offers, it has priced the models according to the misleading continuous horsepower associated with each model, causing the higher misrepresented horsepower models to be priced incrementally.

45.     In addition to the extolling the misrepresented horsepower capabilities to consumers online and in-stores, SOLE also ensures that the misrepresentations are clear to consumers when viewing the actual Treadmills. For example, the F80 has a clearly displayed red

sticker on the face of the treadmill, on the side of the running/walking deck as well as beside the settings screen, as pictured below.







46.     SOLE's advertised continuous horsepower rating is fictional when compared to the actual power available in normal household operation.  In order to achieve the misleading horsepower output that SOLE claims its treadmills are capable of achieving, the power input necessary when plugged into an outlet would have to be two to three times the actual capability of the electrical infrastructure found in homes in the United States.

47.     The continuous horsepower misrepresentations made by SOLE are more than mere subjective promotional statements that could be considered advertising puffery.   SOLE's continuous horsepower misrepresentations are an objectionably measurable and quantifiable

metric that a reasonable consumer is drawn to believe is achievable when using the Treadmills for ordinary exercise use.

## CLASS ACTION ALLEGATIONS

48.     It is believed that there are tens of thousands of Class members across the United States who have purchased SOLE's Treadmills.

49.     Under Fed. R. Civ. P. 23(b)(2) and (b)(3), Plaintiff brings this suit on behalf of herself and a nationwide class (the "Nationwide Class" or "Class") defined as follows:

> All persons in the United States who purchased a SOLE treadmill, during the maximum period of time permitted by law, primarily for personal, family, or household purposes, and not for resale.

50.     Under Fed. R. Civ. P. 23(b)(2) and (b)(3), Plaintiff brings this suit on behalf of herself and an Ohio-statewide class (the "Ohio Class" or "Subclass") defined as follows:

> All persons in the Ohio who purchased a SOLE treadmill, during the maximum period of time permitted by law, primarily for personal, family, or household purposes, and not for resale.

51.     Plaintiff specifically excludes SOLE, its employees, agents, officer, directors, legal representatives, successors, subsidiaries, parent entities, or predecessors; class counsel and its employees; and the judicial officers and its associated court staff assigned to this case from the proposed Classes.

52.     The definitions of the Class and Subclass are unambiguous, and Plaintiff is a member of the Class and Subclass she seeks to represent.

53.     Plaintiff reserves the right to amend or modify the Class and Subclass definitions to create greater specificity, further division into subclasses, or limitation to particular issues as this case progresses.

14

54.    The Class is so numerous and geographically dispersed that joining all Class members would be impracticable. The exact number of Class members is unknown by Plaintiff at this time and can only be ascertained through appropriate discovery. Plaintiff believes that the Class numbers at least in the tens of thousands.

55.    The Subclass is so numerous and geographically dispersed in Ohio that joining all the members would be impracticable. The exact number of members in the Subclass is unknown by Plaintiff at this time and can only be ascertained through appropriate discovery. Plaintiff believes the Subclass consists of at least 100 potential members.

56.    Plaintiff's claims are typical of the claims of the Class because Plaintiff purchased a SOLE treadmill that was sold with a misleading continuous horsepower rating and suffered a pecuniary loss as a result of the purchase. Plaintiff's claims have the same essential characteristics as all other Class members' claims and the evidence to establish the facts and claims stated herein will be the same for Plaintiff and all other members of the Classes.  All claims are based on the course of conduct and similar legal theories. All Class members, including Plaintiff, suffered the same type of injury and possess the same interests in pursuing this case as does Plaintiff, and none benefitted from the misleading representations. A single resolution of these claims would be preferable to a multiplicity of similar actions.

57.    Plaintiff's claims are typical of the claims of the Subclass because Plaintiff purchased a SOLE treadmill sold with a misleading horsepower rating and suffered a pecuniary loss as a result of the purchase. The Subclass Plaintiff's claims have the same essential characteristics as all other Subclass members' claims and the evidence to establish the facts and claims stated herein will be the same for Plaintiff and all other members of the Subclass. Each Subclass claim is based on the course of conduct and similar legal theories. All Subclass members,

including Plaintiff, suffered the same type of injury and possess the same interests in pursuing this case as does Plaintiff, and none benefitted from the misleading representations. A single resolution of these claims would be preferable to a multiplicity of similar actions.

58.     Plaintiff will fairly and adequately protect the interests of the members of the Class and the Subclass and has retained counsel competent and experienced in class action litigation.

59.     SOLE has acted or refused to act on grounds generally applicable to the Class and the Subclass, thereby making it appropriate for the Court to render final injunctive relief regarding the Class as a whole and the Subclass as a whole. Specifically, SOLE continues to misrepresent the continuous horsepower available in its treadmills.

60.     Common questions of law and fact exist as to Class members' claims and Subclass members' claims and predominate over questions affecting only individual Class or Subclass members. Common legal and factual questions include, but are not limited to:

a.     The nature of SOLE's promotion of continuous horsepower representations;

b.     Whether SOLE misrepresented the continuous horsepower, and/or horsepower of the Treadmills;

c.     Whether SOLE's "Continuous Horsepower" claims were false and/or misleading;

d.     Whether SOLE knew or should have known its claims regarding the Treadmills' power were false and/or misleading;

e.     Whether SOLE's representations were material to consumers and the market;

f.     Whether the Treadmills produce "Continuous Horsepower" for any time material to consumer operation and use;

g.   Whether SOLE placed "Continuous Horsepower" ratings on the Treadmills' packaging;

h.   Whether SOLE provided point of sale materials to retailers for use in promoting SOLE's Treadmills and whether those materials included misleading references to continuous horsepower;

i.   Whether SOLE provided advertising copy or suggested promotional language to retailers for use in promoting SOLE's Treadmills and whether those materials included misleading references to continuous horsepower;

j.   Whether SOLE's Continuous Horsepower statements constituted contractual promises or warranties on the Treadmills;

k.   Whether SOLE's misleading representations caused it to receive money that it would not have received absent those representations;

l.   Whether SOLE's actions breached the duties it owed Plaintiff and the Class under express warranties for the Treadmills;

m.   Whether the SOLE's actions breached the duties it owed Plaintiff and the Class under its implied warranties regarding the Treadmills;

n.   Whether Plaintiff and the Class paid more for the Treadmills than they would have paid absent SOLE's misleading horsepower representations;

o.   Whether Class members are entitled to damages, restitution, and/or monetary relief and if so, the amount and nature of such relief; and

p.   Whether the Court should enjoin SOLE from continuing to misrepresent the Treadmills' power.

61.     Resolution of each of these issues will turn upon evidence common to all Class members.

62.     Resolution of issues common to all Class members will predominate over individual issues.

63.     The issues common to the Class and the nature of the common relief creates a cohesive class for injunctive relief.

64.     Treating this case as a class action rather than attempting multiple individual actions provides a superior method for the fair and efficient adjudication of this controversy because:

      a.     It will avoid a multiplicity of suits and consequent burden on the courts and SOLE;

      b.     It would be virtually impossible for all members of the Class and/or Subclass to intervene as parties-plaintiffs in this action;

      c.     It would assure uniform application of the laws and a single, uniform decision across the board without sacrificing procedural fairness or bringing about other undesirable results;

      d.     It will provide court oversight of the claims process, once SOLE's liability is adjudicated;

      e.     It would permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender; and

      f.     It will permit the adjudication of relatively small claims by certain Class members, who could not afford to individually litigate such claims against a large corporate SOLE.

65.     Plaintiff and the proposed Class and Subclass satisfy the requirements of Rule 23(b)(1)(A), (b)(2), and/or (b)(3).

66. Plaintiff is not aware of any difficulties that are likely to be encountered in managing this action that would preclude its maintenance as a class action.

## PRE-LAWSUIT NOTICE

67. On July 25, 2019, Plaintiff provided SOLE with proper pre-suit notice before filing this lawsuit in an attempt to address SOLE's horsepower representations without court intervention and allow SOLE the opportunity to cure. On August 19, 2019, Plaintiff provided Sole with a second notice and the opportunity to cure.

## COUNT 1
### Breach of Express Warranty
### (on behalf of the Nationwide Class)

68. Plaintiff restates and incorporates all other allegations in this Complaint.

69. Plaintiff and the Class bring this count as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

70. SOLE represented on the Treadmills' packaging, on SOLE's website and on point of sale materials used for display and sale of the Treadmills that the Treadmills had certain horsepower specifications, as noted herein, which Plaintiff and other consumers reviewed and considered before purchasing their Treadmills.

71. As detailed above, these representations are false and/or misleading, and the Treadmills Plaintiff and the Class Members purchased do not conform to the above noted horsepower representations and cannot operate as promised during household usage.

72. These representations constitute express warranties as to the Treadmills' qualities, nature, and performance.

73. These representations became part of the basis of the bargain for Plaintiff and the other Class members because they reviewed and considered such statements in deciding to

purchase the Treadmills and because such statements are among the facts a reasonable consumer would consider material in the purchase of treadmills.

74.     Plaintiff and the Class would not have purchased the Treadmills absent SOLE's representations that the Treadmills would operate at 2.5 CHP and above or would have paid substantially less for the Treadmills.

75.     SOLE breached these express warranties because the Treadmills cannot reach the claimed horsepower even under ideal conditions during household operation, and certainly not during any usage time material to consumer use.

76.     At the time the Treadmills were sold, SOLE knew that the written affirmation of facts or written promises regarding the level of horsepower were false.

77.     SOLE's breach of promises and warranties by failing to provide goods conforming to the promised product specifications directly and proximately injured Plaintiff and the Class, by providing them with non-conforming Treadmills and creating an artificially inflated price for those Treadmills.

78.     Plaintiff provided SOLE with notice and an opportunity to cure more than 30 days before the filing of this Lawsuit.

79.     SOLE's breach of the promises and warranties entitles Plaintiff and the Class to: (a) damages, in an amount to be determined at trial, and (b) an order requiring future representations to conform with the Treadmills' actual performance in the type of use for which they are intended.

**COUNT 2**
**Breach of Express Warranty — Magnuson-Moss Warranty Act**
**(on behalf of the Nationwide Class)**

80.     Plaintiff realleges and incorporates all other allegations in this Complaint.

81. Plaintiff and the Class bring this count as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

82. The Treadmills are consumer products as defined in 15 U.S.C. § 2301(1).

83. Plaintiff and the Class members are consumers as defined in 15 U.S.C. § 2301(3).

84. SOLE is a supplier and warrantor as defined in 15 U.S.C. §§ 2301(4) and (5).

85. SOLE provided Plaintiff and Class members "written warranties" within the meaning of 15 U.S.C. § 2301(6).

86. Jurisdiction under the Magnuson-Moss Warranty Act is satisfied because Plaintiff properly invoked the jurisdiction of this Court under CAFA.

87. 15 U.S.C. § 2310(d) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written warranty.

88. SOLE made written warranties regarding the Treadmills to Plaintiff and Class members within the meaning of 15 U.S.C. § 2301(6) (hereinafter, "written warranties" or "express warranties").

89. SOLE breached express warranties made to Plaintiff and the Class members.

90. SOLE promised, affirmed, and expressly warranted that the Treadmills had 2.5 CHP or higher. In other words, SOLE expressly warranted to Plaintiff and Class members that the Treadmills would meet a level of performance, or power output, associated with a 2.5 or higher horsepower treadmill motor, for life because it is a lifetime warranty for the motor drive.[16]

91. The Treadmills' product packaging exemplifies SOLE's express warranty that the Treadmills produces 2.5 CHP or higher for a lifetime. Indeed, the front of the product packaging

---

[16] SOLE's warranties are a bit confusing. Although the treadmill motor is warranted through advertising, marketing, and sales as "lifetime," SOLE also attempts to limit its motor warranty to a maximum of 18 months if a customer cannot find her receipt. Repudiation of express warranty terms through attempted limited warranty terms is highly disfavored in courts around the nation.

includes a picture of the Treadmill, a representation about the CHP capacity (2.5 or higher), and a statement indicating a lifetime warranty on the motor. The Treadmills are warranted to produce 2.5 CHP or higher for at least the duration of the lifetime warranty during household usage.

92.     SOLE's horsepower warranties became part of the basis of the bargain for Plaintiff and other Class members because they reviewed and considered such statements in deciding to purchase the Treadmills, and because such statements are among the facts a reasonable consumer would consider material in the purchase of a high-end treadmill.

93.     Plaintiff reviewed and considered SOLE's representations about the Treadmills producing at least 2.5 CHP before purchasing the Treadmills. But for SOLE's representations about the Treadmills' horsepower capabilities, Plaintiff would not have purchased the Treadmill or would have paid substantially less for the Treadmill.

94.     SOLE breached its horsepower warranties by delivering Treadmills that do not— and indeed cannot—provide the power and performance of a 2.5 CHP or higher treadmill during household usage.

95.     At the time the Treadmills were sold, SOLE knew that the affirmations of fact or written promises they made regarding horsepower were false and were offered with no intention or capability of honoring them.

96.     As a direct and proximate result of SOLE's breach of its express written warranties regarding the horsepower representations, Plaintiff and the Class members have been damaged in an amount to be proven at trial.

97.     In addition, under 15 U.S.C. § 2310(d)(2), Plaintiff and the other Class members are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have reasonably been

incurred by Plaintiff and the other Class members in connection with the commencement and prosecution of this action.

98.     Furthermore, Plaintiff and the Class are also entitled to equitable relief under 15 U.S.C. § 2310(d) and damages as a result of SOLE's violation of its written warranties.

**COUNT 3**
**Breach of Express Warranty**
**(on behalf of the Ohio Class)**

99.     Plaintiff restates and incorporates all other allegations in this Complaint.

100.     Plaintiff and the Ohio Class bring this count as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

101.     SOLE represented that the Treadmills had certain horsepower specifications on the Treadmills' packaging, on its website, and on point of sale materials used for display and sale of the Treadmills, as noted herein, which Plaintiff and the Ohio Class reviewed and considered before purchasing their Treadmills. SOLE warranted that the Treadmills would perform as advertised for with a lifetime warranty on the motor producing the stated CHP.

102.     As detailed above, these representations are false and/or misleading, and the Treadmills Plaintiff and the Ohio Class purchased do not conform to the above-noted horsepower representations, and cannot operate as promised during household operation.

103.     These representations constitute express warranties as to the Treadmills' qualities, nature, and performance.

104.     These representations became part of the basis of the bargain for Plaintiff and the Ohio Class members because they reviewed and considered such statements in deciding to purchase the Treadmills and because such statements are among the facts a reasonable consumer would consider material in the purchase of a high-end treadmill.

105.    Plaintiff and the Ohio Class would not have purchased the Treadmills absent SOLE's representations about the Treadmills producing 2.5 CHP or higher or would have paid substantially less for the Treadmills.

106.    SOLE breached these express warranties because the Treadmills cannot reach the claimed CHP during household use, and are incapable of reaching 2.5 CHP or above even in peak laboratory testing conditions.

107.    At the time the Treadmills were sold, SOLE knew that the written affirmation of facts or written promises regarding the level of horsepower over a useful amount of time were false.

108.    SOLE's breach of promises and warranties by failing to provide goods conforming to the promised product specifications directly and proximately injured Ohio Plaintiff and the Ohio Class, by providing them with non-conforming Treadmills and creating an artificially inflated price for those Treadmills.

109.    Plaintiff provided SOLE with reasonable notice and the opportunity to cure before the filing of this lawsuit.

110.    SOLE's breach of the promises and warranties entitles Plaintiff and the Ohio Class to: (a) damages, in an amount to be determined at trial, and (b) an order requiring future representations to conform with the Treadmills' actual performance in the type of use for which they are intended.

## COUNT 4
### Breach of Implied Warranty
### (on behalf of the Nationwide Class)

111.    Plaintiff restates and incorporates all other allegations in this Complaint as though fully pled herein.

112. Plaintiff brings this count as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

113. The laws governing the sale of goods imply a warranty that the goods conform to the representations and specifications suppliers/merchants supply for the goods and are fit for the purposes underlying the goods sale.

114. The purpose of these warranties is to protect consumers and consumers as the intended beneficiaries of those warranties, as the representations made to facilitate SOLE's Treadmill sales by creating consumer demand and consumer purchases.

115. The Treadmills are consumer goods.

116. SOLE breached these implied contractual provisions because the Treadmills cannot perform as SOLE promised.

117. SOLE cannot provide a remedy or provide conforming goods because motors useable in the Treadmills inherently cannot provide the represented power in ordinary, sustained operation.

118. SOLE's breach of the implied warranty of merchantability injured the Plaintiff and the Class by providing Treadmills that could not do the work as warranted and caused Plaintiff and the Class to pay a premium price for the Treadmills.

119. SOLE's actions breach implied warranties due consumers.

120. SOLE's breach entitles Plaintiff and the Class to: (a) damages, in an amount to be determined at trial, and (b) an order requiring future representations to conform with the Treadmills' actual performance in the type of use for which they are intended.

121. Plaintiff provided SOLE with written notice of the breach of warranty and an opportunity to cure more than 30 days before filing the complaint.

## COUNT 5
### Breach of Implied Warranty — Magnuson-Moss Warranty Act
### (on behalf of the Nationwide Class)

122. Plaintiff restates and incorporates all other allegations in this Complaint.

123. Plaintiff brings this claim on behalf of the Nationwide Class pursuant to Rule 23 of the Federal Rules of Civil Procedure.

124. The Treadmills are consumer products within the meaning of 15 U.S.C. § 2301(1).

125. Plaintiff and the Class members are consumers within the meaning of 15 U.S.C. § 2301(3) because they are persons entitled under applicable state laws to enforce against the warrantor the obligations of its express and implied warranties.

126. SOLE is and was a supplier of consumer products and warrantors within the meaning of 15 U.S.C. §§2301(4) and (5).

127. Jurisdiction under the Magnuson-Moss Warranty Act is satisfied because Plaintiff properly invoked the jurisdiction of this Court under CAFA.

128. 15 U.S.C. § 2310(d) provides a cause of action to any consumer who is damaged by the failure of a warrantor to comply with an implied warranty.

129. SOLE made implied warranties regarding the Treadmills to Plaintiff and Class members within the meaning of 15 U.S.C. § 2301(7). SOLE provided Plaintiff and other Class members an implied warranty of merchantability within the meaning of 15 U.S.C. § 2301(7).

130. SOLE breached the implied warranty of merchantability because the Treadmills do not—and cannot—perform to the ordinary standard of use of a 2.5 CHP or higher treadmill during household operation. Specifically, the Treadmills do not—and cannot—produce the power expected of a 2.5 CHP or higher treadmill during ordinary household use.

131.    Pursuant to 15 U.S.C. § 2310(e), Plaintiff is entitled to bring this class action and is not required to give SOLE notice and an opportunity to cure until such time as the Court determines the representative capacity of Plaintiff pursuant to Rule 23 of the Federal Rules of Civil Procedure.

132.    As a direct and proximate result of SOLE's breach of the warranties regarding the CHP representations, Plaintiff, individually and on behalf of all other Class members, has been damaged. In addition, under 15 U.S.C. § 2310(d)(2), Plaintiff and the other Class members are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have reasonably been incurred by Plaintiff and the other Class members in connection with the commencement and prosecution of this action.

133.    Furthermore, Plaintiff and the Class are also entitled to equitable relief under 15 U.S.C. § 2310(d) and damages as a result of SOLE's violation of its implied warranties.

**<u>COUNT 6</u>**
**Violation of Ohio Consumer Sales Practices Act; Ohio Revised Code § 1345.01 *et seq*.**
**(on behalf of the Ohio Class)**

134.    Plaintiff restates and incorporates all other allegations in this Complaint as though fully pled herein.

135.    Plaintiff and the Ohio Class bring this count as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

136.    SOLE is a supplier within the definition of the Ohio Consumer Sales Practices Act, Ohio Revised Code § 1345.01 ("Ohio Act"), as it supplied and manufactured the Treadmills Plaintiff and members of the Ohio Class purchased.

137.    Plaintiff and members of the Ohio Class are consumers as defined in the Ohio Act.

138.    The Ohio Act notes that it is deceptive for SOLE to state that the Treadmills "ha[ve] sponsorship, approval, performance characteristics, accessories, uses, or benefits that [they] do not have." Ohio Act, § 1345.02(B)(1).

139.    Plaintiff and members of the Ohio Class's purchase of Treadmills after reviewing SOLE's representations that the Treadmills contained 2.50 or higher CHP was a consumer transaction.

140.    But for SOLE's misleading statements about the Treadmills containing 2.50 CHP or more, Plaintiff and the Ohio Class would not have purchased their Treadmills or would have paid substantially less for the Treadmills.

141.    SOLE places CHP ratings on the Treadmills' point of sale materials supplied to retailers, like Dick's Sporting Goods and online advertisements on SOLE's website.

142.    The CHP promises and representations are misleading and deceptive for the reasons discussed herein.

143.    SOLE's representations regarding the Treadmills' CHP are material to a reasonable consumer and were designed to affect consumer decisions and conduct.

144.    SOLE understood and intended that the representations about the Treadmills' horsepower would influence consumer behavior.

145.    SOLE understands it has an obligation to ensure the honesty of all promotions and avoid misleading the public regarding its Treadmills.

146.    SOLE's misleading horsepower statements in point of sale materials, on its website and on the actual Treadmills, constitute unfair methods of competition and unfair and/or deceptive acts or practices in the conduct of trade or commerce for treadmill sales to consumers.

147.    SOLE's acts and practices offend public policy as established by statute.

148.     SOLE's acts and practices are immoral, unethical, oppressive and unscrupulous.

149.     SOLE's conduct substantially injured actual and potential consumers, the public and competition in each of the states in which the Treadmills were sold.  As SOLE knows, Plaintiff, Ohio Class members and consumers would not pay the prices they paid absent SOLE's false and misleading horsepower representations or would have paid substantially less for the Treadmills.

150.     SOLE's conduct materially affected available information regarding its products to consumers nationwide and in each state in which the Treadmills were sold.  SOLE's conduct thus improperly distorted the information available to the public regarding the Treadmills.

151.     SOLE's actions caused consumers to overpay for the Treadmills.  These injuries are not outweighed by any countervailing benefits to consumers or competition. No legally cognizable benefit to consumers or competition results from SOLE's misconduct.

152.     SOLE's actions involved information material to Treadmill purchases. The misleading nature of the promises or affirmations at the point of sale, online, on the actual Treadmills and other similar representations, and the failure to include necessary explanatory information regarding such representations, were material to the price at which consumers purchased the Treadmills.

153.     Because the representations about treadmill power involve technical information that an ordinary consumer could not readily test, consumers could not have reasonably avoided the losses caused by misrepresentations forming the basis for the Treadmills' price.

154.     Plaintiff and the Ohio Class purchased the Treadmills for personal, family or household use and not for resale.  Thus, the practices discussed above constitute unfair competition or unfair, unconscionable, deceptive, or unlawful acts or business practices in violation of the Ohio Act.

155. The foregoing unfair and deceptive practices directly, foreseeably and proximately caused Plaintiff and the Ohio Class to suffer an ascertainable loss when they paid a premium for the Treadmills above and beyond what they should have paid and provided SOLE more in revenues for the Treadmills than they could have received absent its false and misleading representations.

156. SOLE was on notice before the filing of this suit that its conduct in misleading consumers about the Treadmills' characteristics was a violation of the Ohio Act. *See Lyons v. Brown*, 332 N.E.2d 380, 384 (Ohio Com. Pl. 1974) (concluding that defendant violated the Ohio Act by misleading consumers about the quality of appliances); *Chapman v. Tristar Prods., Inc.*, No. 16-cv-1114, 2016 WL 6216135, at *4 (N.D. Ohio Oct. 25, 2016) (finding that *Lyons v. Brown* was sufficient to give defendant pre-suit notice that misleading statements about an appliance's characteristics had been found to violate the Ohio Act).

157. SOLE was also on notice before the filing of this suit that its conduct in misleading consumers about the Treadmills' characteristics was a violation of the Ohio Act because the actions taken by SOLE are "an act or practice declared to be deceptive or unconscionable by rule adopted under division (B)(2) of section 1345.05 of the [Ohio] Revised code before the consumer transaction on which [this] action is based." Ohio Revised Code § 1345.09(B). Specifically, Ohio Administrative Code § 109:2-4-02(A)(1) states:

> It is a deceptive act or practice in connection with a consumer transaction for a supplier, in the sale or offering for sale of goods or services, to make any offer in written or printed advertising or promotional literature without stating clearly and conspicuously in close proximity to the words stating the offer any material exclusions, reservations, limitations, modifications, or conditions. Disclosure shall be easily legible to anyone reading the advertising or promotional literature and shall be sufficiently specific so as to leave no reasonable probability that the terms of the offer might be misunderstood.

158. Plaintiff and the Ohio Class are entitled to recover damages and other appropriate relief, as alleged below.

## COUNT 7
### Negligent Misrepresentation
### (on behalf of the Nationwide Class)

159.    Plaintiff restates and incorporates all other allegations in this Complaint as though fully pled herein.

160.    Plaintiff brings this claim on behalf of the Nationwide Class pursuant to Rule 23 of the Federal Rules of Civil Procedure.

161.    In the course of business, SOLE misrepresented that the Treadmills maintain a continuous horsepower output which they do not possess.  SOLE had a duty to disclose the truthful continuous horsepower capabilities rather than the misrepresented information.

162.    SOLE supplied the Plaintiff and Class members false and misleading information in which a reasonable consumer would have used as guidance in evaluating the Treadmills capabilities.

163.    At the time Defendant made these misrepresentations, Defendant knew or should have known that these continuous horsepower representations were false or made them without knowledge of their truth or veracity.

164.    SOLE negligently misrepresented and/or at a minimum, negligently omitted material facts concerning the Treadmills' power representations, namely their true continuous horsepower capabilities while in operating use.

165.    The misrepresentations and omissions made by Defendant, upon which Plaintiff and Class members reasonably and justifiably relied, were intended to induce and actually induced Plaintiff and Class members to purchase the Treadmills.

166.    Plaintiff and Class members would not have purchased the Treadmills or would have paid considerably less, if the true facts concerning the continuous horsepower claims had been known.

167.    SOLE's deceitful actions have caused damage to Plaintiff and Class members, who are entitled to damages and other legal and equitable relief as a result.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, respectfully request that this Court:

1.  Certify the proposed Class and Subclass and appoint Plaintiff and her legal counsel to represent the Class and Subclass;

2.  Find in favor of Plaintiff, the Class, and the Subclass on all counts asserted herein;

3.  Declare that SOLE's conduct violated the statutes referenced herein;

4.  Award Damages, including compensatory, exemplary, and statutory to Plaintiff, the Class, and the Subclass in an amount to be determined at trial;

5.  Grant restitution to Plaintiff, the Class, and the Subclass and require SOLE to disgorge its ill-gotten gains;

6.  Award Plaintiff, the Class, and the Subclass punitive damages in an amount to be determined at trial;

7.  Award Plaintiff, the Class, and the Subclass reasonable attorneys' fees and the costs and disbursements of this suit incurred herein;

8.  Enjoin SOLE from future misrepresentations regarding the horsepower of its Treadmills;

9.  Declare the parties' rights and obligations under the warranties applicable to the Treadmill sales and under the law of the relevant state;

10. Award Plaintiff, the Class, and the Subclass pre-judgment and post-judgment interest at the highest legal rate to the extent provided by law; and

11. Order any such other and further relief the Court deems just and equitable.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury of all issues so triable.

Respectfully submitted,

*/s/ Terence R. Coates*
Terence R. Coates (0085579)
Trial Attorney
W.B. Markovits (0018514)
Paul M. De Marco (0041153)
Justin C. Walker (080001)
MARKOVITS, STOCK & DEMARCO, LLC
3825 Edwards Road, Suite 650
Cincinnati, OH 45209
Phone: (513) 651-3700
Fax: (513) 665-0219s
*bmarkovits@msdlegal.com*
*pdemarco@msdlegal.com*
*tcoates@msdlegal.com*
*jwalker@msdlegal.com*

Nathan D. Prosser (*pro hac vice forthcoming*)
HELLMUTH & JOHNSON, PLLC
8050 West 78th Street
Edina. MN 55439
Telephone: (952) 941-4005
Fax: (952) 941-2337
*nprosser@hjlawfirm.com*

*Counsel for Plaintiff, the Class, and the Subclass*