# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

LAURA BECHTEL, *et al.*,
    Plaintiffs,

        v.

FITNESS EQUIPMENT SERVICES, LLC,
    Defendant.

Case No. 1:19-cv-726
Litkovitz, M.J.

**ORDER**

This matter is before the Court on plaintiffs' Motion for Class Certification and to Appoint Class Representatives and Class Counsel (Doc. 37), defendant Fitness Equipment Services, LLC, *dba* Sole Fitness's ("Sole") response in opposition (Doc. 45), and plaintiffs' reply memorandum (Doc. 52).  The Court conducted a hearing on this matter on August 16, 2021.

## I.    Background

Sole manufactures, markets and sells several treadmill models for household use.  Sole represents on its website and marketing materials that the treadmills operate at a continuous horsepower ("CHP") range of 2.5 to 4.0.  According to plaintiffs, Sole's treadmills cannot ever reach the advertised CHP in household use because standard residential outlets do not produce the necessary wattage to achieve the stated CHP.  Plaintiffs claim that Sole's CHP "misrepresentations" led all Sole treadmill purchasers to overpay for treadmills based on unachievable CHP marketing.  Plaintiffs seek to right this alleged wrong via a nationwide class action, including specified subclasses.

Sole, on the other hand, declares that its award-winning treadmills produce more than enough horsepower for the vast majority of household users, even if the advertised CHP were not achievable using standard residential outlets.  Sole claims it did not misrepresent CHP because even plaintiffs acknowledge that the stated CHP can be achieved in laboratory conditions.

According to Sole, discerning consumers choose a treadmill based on a number of variables, and as long as the treadmills are at least as powerful as the individual user requires, buyers are satisfied with their purchases and suffer no injury.  Sole contends that there are too many individual issues, both factually and legally, to warrant a class action.

### A. <u>Plaintiffs' Allegations</u>

Sole's marketing and advertising materials prevalently feature a specific CHP for each treadmill model ranging from 2.5 to 4.0.  (Doc. 38-2 at PAGEID 382).  Dick's Sporting Goods, the largest third-party retailer of Sole treadmills, published a "Pro Tips guide" to the "Top Five Things That Influence the Price of Treadmills" in which it listed CHP as the most important factor.  (Doc. 38-7 at PAGEID 432-33).[1]

Plaintiffs allege that Sole's CHP representations are "inaccurate, misleading, and materially overstate the Treadmills' true operating horsepower" because "it is not possible for these Treadmills to operate at a continuous horsepower of 4.0 or even 2.5 continuous horsepower when plugged into a standard 120-volt, 15-amp outlet found in residential homes in the United States."  (Doc. 31 at PAGEID 200).  In his report, plaintiffs' expert, Bradley Frustaglio of Yeadon Engineering Services ("YES"), summarized his testing of Sole F80 treadmill motors.  (Doc. 38-4).

According to YES, Sole treadmills employ a pulse width modulated ("PWM") speed control.  PWM controls use a series of "ON-OFF" pulses to control the power applied to the

---

[1] According to the "Pro Tips guide" Dick's Sporting Goods published on April 10, 2020:

> To help you take the step forward that you need, we have broken down the top five features that affect the price of your treadmill.
> 1. GET ON YOUR HIGH HORSE(POWER)
> One of the ways you can choose a treadmill that fits your needs is by looking at the **continuous horsepower** (CHP) of the machine.  The CHP is the measure of how much power the motor maintains throughout the workout, and the higher it is, the more expensive the treadmill will likely be.

(Doc. 38-7 at PageID 432-33) (emphasis in original).

motor by varying the fraction of time the output voltage is "ON" compared to the fraction it is "OFF." (*Id.* at PAGEID 401-02).  Treadmill motors commonly use PWM controllers because they can control belt speed in response to a console speed setting.  (*Id.* at PAGEID 402).

YES tested the installed F80 motor under simulated household use (i.e., powered by a 120-volt line while operated by a 188-pound subject at various speed settings) and tested the motor capability removed from the treadmill using a laboratory DC power supply.  (*Id.* at PAGEID 405-10).  Using a dynamometer to measure torque, speed and output power, YES determined that the motor required "over two times the allowable 1800W continuous rating for a 120V/15A circuit" to produce 3.5 horsepower output.  (*Id.* at PAGEID 419).  YES ultimately concluded:

> After reviewing the various Sole treadmill models and represented CHP capabilities it is my opinion that all Sole treadmills with a DC electric motor and an onboard PWM controller are incapable of producing the continuous horsepower output Sole advertised or marketed to consumers for the F60, F63, F65, F80, F85, S77, TT8 and TT9 treadmills.  Testing is not required to confirm as the absolute maximum theoretical CHP is 2.41HP.  When PWM control and losses are included . . . the F80 treadmills [sic] maximum horsepower output is 1.775HP and no Sole treadmill can achieve a CHP greater than 2.41 CHP connected to a 120VAC 60Hz 15A household breaker.

(Doc. 38-4 at PAGEID 421).

According to plaintiffs, every person who purchased a treadmill for home use paid a "price premium"[2] for CHP above 2.41 that could not be reached using residential electrical supply.  (Doc. 38 at PAGEID 353).  Plaintiffs offered reports from two purported damages experts: Colin Weir, an expert economist; and Steven Gaskin, an independent survey expert. (Doc. 38-10; Doc. 38-11).  Weir and Gaskin propose using choice-based conjoint ("CBC") analysis to calculate classwide damages.  (Doc. 38-10 at PAGEID 455; Doc. 38-11 at PAGEID

---

[2] Price premium damages are calculated by subtracting the market value of treadmills with the accurate CHP claim from the market value of treadmills with the inflated CHP claim.

494).

Specifically, Gaskin will design a survey that requires panelists to make various choices and rankings relating to product attributes, prices, and alternatives using randomized order and appearance to avoid focusing the survey on a single attribute. (Doc. 38-10 at PAGEID 458; Doc. 38-11 at PAGEID 498). These "choice sets" will vary by brand, CHP, running surface area, display screen, maximum incline, heart rate monitoring, warranty, and price. (Doc. 38-11 at PAGEID 500). Gaskin intends to conduct a blind internet survey of 300 prescreened respondents who have purchased a treadmill in the last six years. (*Id.* at PAGEID 504-07).

A statistical analysis is then applied to the survey responses to calculate a specific value for each attribute. (Doc. 38-10 at PAGEID 459). Once the value, if any, attributed to CHP is determined, the number can then be applied to the entire class to determine the price premium damages on a class-wide basis.

**B. Defendant's Response**

Sole alleges that "plaintiffs do not allege any dissatisfaction with how the F80 Sole treadmills actually perform during use," and "Sole's treadmills have won accolades, received awards, and obtained high ratings from third-party product reviewers consistently." (Doc. 45 at PAGEID 589-90). According to Sole, plaintiffs are seeking financial benefit from a problem that exists only in "the highly limited laboratory testing conducted by Plaintiffs' treadmill motor expert." (*Id.* at PAGEID 590).

Sole retained its own expert, Adam Bainbridge from S-E-A Investigation, Research and Testing ("SEA"). (Doc. 45-1). In addition to identifying perceived problems with YES's testing, SEA concluded:

There has been no evidence presented to S-E-A to indicate that users of Sole treadmills are not receiving the necessary motor power output to meet the various

4

demands of their individual workouts. Power usage will always be dependent on the specific weight and running style of a user. The maximum motor horsepower output for a treadmill application would occur at the top speed setting and maximum-rated user weight; therefore, the overwhelming majority of treadmill users would not be impacted by the upper bounds of the motor nameplate rating because the majority of users would not operate the device at the maximum speed and weight rating. It would be expected that most users could operate through the range of the machine while staying well below the limits of the motor. A treadmill is designed to assure that appropriate power is available to every user up to the maximum speed and rated weight of the device.

(Doc. 45-1 at PAGEID 628-29). SEA further stated that a "motor nameplate rating of '3.5 CHP,' (sic) does not imply that the motor will always or ever deliver that much power, (sic) it is simply the upper threshold of treadmill-duty loading the motor can sustain without incurring damage," and both YES's and SEA's testing establish that the motors can reach the rated value "under constant loading with a DC power supply." (*Id.* at PAGEID 629).

Sole also retained a damages expert, Keith Ugone, who concluded that plaintiffs' proposed CBC analysis would not measure the "claimed 'reduction in market value' (i.e., a price premium)" but instead "measures a difference in 'willingness-to-pay.'" (Doc. 45-2 at PAGEID 668). According to Ugone, "damages associated with allegations of deceptive labeling would be equal to the difference in the price that putative Class members paid for the Challenged Products (i.e., actual prices) and the price putative Class members would have paid in the absence of the alleged misrepresentation (i.e., in the 'but-for-world'), if such a difference exists." (*Id.* at PAGEID 681). Ugone reports that damages rely on both demand side (a consumers' willingness to pay) and supply side (producers' willingness to sell) considerations, and the proposed CBC analysis evaluates only the demand side of the equation. (*Id.* at PAGEID 682).[3]

---

[3] According to Ugone, one major flaw in plaintiffs' proposed CBC analysis is the failure to account for other products available that would affect the treadmill market. (Doc. 45-2 at PAGEID 687). Sole notes that the law firms representing the plaintiffs here have lodged identical class action allegations against Sole's primary home treadmill competitors. (Doc. 45 at PAGEID 600-01) (citing *Barclay v. Icon Health & Fitness, Inc. and NordicTrack, Inc.*, No. 18-cv-0270 (D. Minn. 2019) and *Walker v. Nautilus, Inc.*, No. 2:20-cv-3414 (S.D. Ohio

C. **Class Certification Requested**

Plaintiffs seek to certify the following classes (as modified in plaintiffs' reply brief and at oral argument):

**Ohio Class**:  All persons in Ohio who purchased a Sole F63 (3.0 CHP), Sole F65 (3.25 CHP), Sole S77 (4.0 CHP), Sole F80 (3.5 CHP), Sole F85 (4.0 CHP), Sole TT8 (4.0 CHP), Sole F60 (2.75 CHP), Sole S73 (3.0 CHP), Sole F83 (3.25 CHP), and/or Sole TT9 (4.0 CHP) treadmill from August 30, 2015 through class certification, primarily for personal, family, or household purposes, and not for resale. **(Breach of express warranty and Magnuson-Moss Warranty Act breach of express warranty)**.

**Ohio Class**:  All persons in Ohio who purchased a Sole F63 (3.0 CHP), Sole F65 (3.25 CHP), Sole S77 (4.0 CHP), Sole F80 (3.5 CHP), Sole F85 (4.0 CHP), Sole TT8 (4.0 CHP), Sole F60 (2.75 CHP), Sole S73 (3.0 CHP), Sole F83 (3.25 CHP), and/or Sole TT9 (4.0 CHP) treadmill from August 30, 2017 through class certification, primarily for personal, family, or household purposes, and not for resale.  **(Ohio Consumer Sales Practices Act)**.

**Minnesota Class**:  All persons in Minnesota who purchased a Sole F63 (3.0 CHP), Sole F65 (3.25 CHP), Sole S77 (4.0 CHP), Sole F80 (3.5 CHP), Sole F85 (4.0 CHP), Sole TT8 (4.0 CHP), Sole F60 (2.75 CHP), Sole S73 (3.0 CHP), Sole F83 (3.25 CHP), and/or Sole TT9 (4.0 CHP) treadmill from August 30, 2015 through class certification, primarily for personal, family, or household purposes, and not for resale. **(Breach of express warranty; Magnuson-Moss Warranty Act breach of express warranty; breach of implied warranty)**.

**Minnesota Class**:  All persons in Minnesota who purchased a Sole F63 (3.0 CHP), Sole F65 (3.25 CHP), Sole S77 (4.0 CHP), Sole F80 (3.5 CHP), Sole F85 (4.0 CHP), Sole TT8 (4.0 CHP), Sole F60 (2.75 CHP), Sole S73 (3.0 CHP), Sole F83 (3.25 CHP), and/or Sole TT9 (4.0 CHP) treadmill from August 30, 2013 through class certification, primarily for personal, family, or household purposes, and not for resale.  **(Uniform Deceptive Trade Practices Act; Consumer Fraud Act; False Statement in Advertising; Unlawful Trade Practice Act; negligent misrepresentation)**.

**Nationwide Class**:  All persons in the United States who purchased a Sole F63 (3.0 CHP), Sole F65 (3.25 CHP), Sole S77 (4.0 CHP), Sole F80 (3.5 CHP), Sole F85 (4.0 CHP), Sole TT8 (4.0 CHP), Sole F60 (2.75 CHP), Sole S73 (3.0 CHP), Sole F83 (3.25 CHP), and/or Sole TT9 (4.0 CHP) treadmill from August 30, 2015 through class certification, primarily for personal, family, or household purposes, and not for resale.  **(Breach of express warranty and Magnuson-Moss Warranty Act breach of express warranty)**.

---

2020)).  According to Sole, if all home treadmill providers represent their treadmill CHP the same way Sole does, plaintiffs suffered no damages because they would have been unable to purchase similar treadmills without paying the alleged price premium anywhere else.  (Doc. 45 at PAGEID 601).

From these classes, plaintiffs specifically exclude "SOLE, its employees, agents, officer[s], directors, legal representatives, successors, subsidiaries, parent entities, or predecessors and its employees; and judicial officers and its associated court staff assigned to this case." (Doc. 38 at PAGEID 349, n. 6 (quoting Doc. 31 at PAGEID 211)).

Specifically, plaintiffs seek to certify an Ohio class for breach of express warranty, Magnuson-Moss Warranty Act ("MMWA") breach of express warranty (15 U.S.C. § 2310), and Ohio Consumer Sales Practices Act (Ohio Rev. Code § 1345.01 *et seq.*) claims. (Doc. 38 at PAGEID 348, n. 4).[4] Plaintiffs seek to certify a Minnesota class for breach of express warranty (Minn. Stat. § 336.2-313), MMWA breach of express warranty (15 U.S.C. § 2310), breach of implied warranty (Minn. Stat. § 336.2-314), Minnesota Uniform Deceptive Trade Practices Act (Minn. Stat. § 325D.43-48), Minnesota Consumer Fraud Act (Minn. Stat. § 325F.68-70), Minnesota False Statement in Advertising Act (Minn. Stat. § 325F.67), Minnesota Unlawful Trade Practices Act (Minn. Stat. § 325.13), and negligent misrepresentation claims. (Doc. 38 at PAGEID 349, n. 5; Doc. 31 at PAGEID 223-36). Plaintiffs seek to certify a nationwide class for breach of express warranty, MMWA breach of express warranty (15 U.S.C. § 2310), breach of implied warranty, MMWA breach of implied warranty (15 U.S.C. § 2310), and negligent misrepresentation claims. (Doc. 31 at PAGEID 216-23, 242-43).

---

[4] Although plaintiffs seek to allege a MMWA claim on behalf of the Ohio class (Doc. 38 at PAGEID 348, n. 4), the amended complaint contains, on behalf of the Ohio class, only a breach of express warranty claim (Count 13) and an Ohio Consumer Sales Practices Act claim (Count 14). Plaintiffs alleged a MMWA breach of express warranty claim on behalf of the desired nationwide class that the Court could limit to only Ohio class members. (Doc. 31 at PAGEID 218-20 (Count 2)). Because Sole was on notice that plaintiffs alleged both a nationwide and an Ohio breach of express warranty claim and because plaintiffs' MMWA claim "derives from, but is not duplicative of," their Ohio claim, the Court will permit both plaintiffs' Ohio breach of express warranty claim and the MMWA claim to proceed on behalf of the putative Ohio class. *Mayernik v. CertainTeed LLC*, 476 F. Supp. 3d 625, 633 (S.D. Ohio 2020); *In re American Med. Sys., Inc.*, 75 F.3d 1069 (6th Cir. 1996) (courts have inherent power to manage dockets so long as management is in harmony with the Federal Rules of Civil Procedure).

## II.     Standing

Plaintiffs in this case purchased Sole F80 treadmills in Minnesota and Ohio.  Yet, they seek to represent purchasers of other Sole treadmill models in a nationwide class action. Although defendant raises the standing issue in arguing lack of commonality and typicality under Rule 23(a), jurisdictional issues, including Article III standing requirements, must be addressed first.  *Kanuszewski v. Michigan Dept. of Health and Human Servs.*, 927 F.3d 396 (6th Cir. 2019).

"A plaintiff has standing only if he can 'allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.'" *California v. Texas*, 141 S.Ct. 2104, 2113 (2021) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006)).  "[A] plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought."  *Kanuszewski*, 927 F.3d at 406 (quoting *Town of Chester v. Laroe Estates, Inc.*, 137 S.Ct. 1645, 1650 (2017)).  In class actions, "potential class representatives must demonstrate 'individual standing vis-à-vis the defendant; [they] cannot acquire such standing merely by virtue of bringing a class action.'"  *Perry v. Allstate Indem. Co.*, 953 F.3d 417, 420 (6th Cir. 2020) (quoting *Soehnlen v. Fleet Owners Ins. Fund*, 844 F.3d 576, 582 (6th Cir. 2016)).

In the case at bar, named plaintiffs Laura Bechtel and Troy Thoennes declared that: (1) they purchased Sole F80 treadmills expecting to receive the advertised 3.5 CHP; and (2) had they known the treadmill could achieve no more than 2.41 CHP in home use, they would not have purchased a Sole F80 treadmill or would have paid substantially less to purchase one.  (Doc. 38-5 at PAGEID 426; Doc. 38-6 at PAGEID 429-30).  Those allegations sufficiently establish Article III standing for the individual plaintiffs' claims against Sole.

However, as to claims by putative class members, two significant issues remain: (1) whether plaintiffs who bought Sole F80 treadmills have standing to bring class claims related to other models; and (2) whether named plaintiffs who bought treadmills in Minnesota and Ohio for home use in Minnesota and Ohio have standing to bring nationwide class claims. The Court will address these issues in turn.

First, as to class claims for other Sole treadmill models, this Court recently summarized the applicable law as follows:

> "Courts are split as to whether plaintiffs have standing to assert claims relating to products they themselves did not purchase, but which are substantially similar to products they did purchase." *Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 541 (S.D.N.Y. 2013). Defendants note that courts often dismiss class-action claims with respect to products the named plaintiff did not actually buy. See, e.g., *Murray v. Sears, Roebuck & Co.*, No. C 09-5744 CW, at *9, 2014 WL 563264, 2014 U.S. Dist. LEXIS 18082, at *31-32 (N.D. Cal. Feb. 12, 2014) ("A plaintiff therefore may not represent a class in bringing CLRA claims based on products that he or she never purchased."); *Pearson v. Target Corp.*, No. 11 CV 7972, 2012 WL 7761986, at *1, 2012 U.S. Dist. LEXIS 187208, at *3-4 (N.D. Ill. Nov. 9, 2012) ("[H]ow could [plaintiff] possibly have been injured by representations made on a product he did not buy?"); *Granfield v. Nvidia Corp.*, No. C 11-05403 JW, 2012 WL 2847575, at *6, 2012 U.S. Dist. LEXIS 98678, at *18-19 (N.D. Cal. July 11, 2012) ("[W]hen a plaintiff asserts claims based both on products that she purchased and products that she did not purchase, claims relating to products not purchased must be dismissed for lack of standing.").
>
> However, "[t]he majority of the courts that have carefully analyzed the question hold that a plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase so long as the products and alleged misrepresentations are substantially similar." *Brown v. Hain Celestial Group, Inc.*, 913 F. Supp. 2d 881, 890 (N.D. Cal. 2012) (citing several cases). "[T]he critical inquiry is whether there is sufficient similarity between the products purchased and not purchased." *Davidson v. Kimberly–Clark Corp.,* No. C 14–1783, 2014 WL 3919857, at *6 (N.D. Cal. Aug. 8, 2014) (internal quotation marks omitted). The Court agrees with the majority view and finds that as long as the purchased and unpurchased products are substantially similar, Plaintiffs have standing to assert claims based on products they did not purchase.

*Hawes v. Macy's Inc.*, 346 F. Supp. 3d 1086, 1091 (S.D. Ohio 2018) (permitting claims for inflated thread counts in related brands of bed sheets even though named plaintiffs purchased only one type of sheets).

Applying the majority view to the case at bar, the Sole treadmill models are substantially similar for purposes of the claims at issue. Plaintiffs allege that Sole consistently made essentially identical inflated CHP representations in marketing, sales, and packaging materials for all included treadmill models. (Doc. 31 at PAGEID 207-210). Plaintiffs further claim that all the personal use treadmill models are equally unable to exceed 2.41 horsepower because American residential electrical outlets do not produce the required power to do so. (*Id.* at PAGEID 204-205). Because both the alleged misrepresentations and the physical treadmill qualities important to this action are substantially similar, plaintiffs have standing to assert claims for treadmill models they did not purchase. *See Hawes*, 346 F. Supp. 3d at 1091.

As to the second issue, whether plaintiffs who acted exclusively in two individual states can assert predominantly state law claims on behalf of a nationwide class, courts disagree if this is an Article III standing issue or a Rule 23(b)(2) inquiry. *Compare Langan v. Johnson & Johnson Consumer Co., Inc.*, 879 F.3d 88, 95 (2d Cir. 2018) (Variations in state laws should be considered "as questions of predominance under Rule 23(b)(3), rather than standing under Article III" because "it makes little sense to dismiss the state law claims of unnamed class members for want of standing when there was no requirement that the named plaintiffs have individual standing to bring those claims in the first place.") *with Withrow v. FCA US LLC*, No. 19-13214, 2021 WL 2529847, at *9 (E.D. Mich. June 21, 2021) (electing to "address the standing issue at the motion to dismiss stage rather than in the context of Rule 23" because "there is *no* causal connection between the 'challenged conduct' (Fiat-Chrysler's violations of

Montana law) and Nestor's injury (the purchase of a defective Jeep in California)" (emphasis in original)). The Court need not decide which approach to follow here because, as will be explained below, a nationwide class is not appropriate anyway.

## III. Dismissal of Certain Minnesota Claims

Sole contends that class certification should be denied for plaintiffs' Minnesota statutory claims and negligent misrepresentation claim because they are precluded as a matter of law pursuant to Rule 12(c). (Doc. 45 at PAGEID 611-13). The Court agrees.

### A. <u>Rule 12(c) Standard</u>

A motion for judgment on the pleadings is analyzed under the same standard applicable to a Rule 12(b)(6) motion to dismiss. *See D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014). In determining a Rule 12(c) motion, the court must accept all well-pled factual allegations of the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Philadelphia Indem. Ins. Co. v. Youth Alive, Inc.*, 732 F.3d 645, 649 (6th Cir. 2013). The court "need not accept as true legal conclusions or unwarranted factual inferences, and conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *D'Ambrosio*, 747 F.3d at 383 (quoting *Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 275-76 (6th Cir. 2010) (citation and quotation marks omitted)). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *Republic Bank & Trust Co. v. Bear Stearns & Co., Inc.*, 683 F.3d 239, 246-47 (6th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Rather, '[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Id*. at 247 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

11

**B. <u>Minnesota Deceptive Trade Practices Act ("MDTPA") (Minn. Stat. § 325D.43-48)</u>**
   **<u>(Count 8)</u>**

"A party seeking relief under the MDTPA must demonstrate a likelihood of future harm because the statute provides relief only 'from future damage, not past damage.'" *Knotts v. Nissan North America, Inc.*, 346 F. Supp. 3d 1310, 1327 (D. Minn. 2018) (quoting *Gardner v. First Am. Title Ins. Co.*, 296 F. Supp. 2d 1011, 1020 (D. Minn. 2003)). "A plaintiff asserting a claim under MDTPA must allege an irreparable injury or threat of future harm in order to withstand a motion to dismiss." *Id.* at 1328.

In the case at bar, plaintiffs fail to adequately allege an irreparable injury or sufficient threat of future harm. Count eight of plaintiffs' amended complaint alleges only that "Defendant's conduct caused substantial injury and provided no benefit to consumers," "Defendant intended to mislead [plaintiffs] and induce them to rely on its misrepresentations," and "[h]ad Defendant disclosed to [plaintiffs] that its Treadmills did not meet the rating for CHP as advertised, Defendant would have been unable to justify the price differentiation and premium price charged to consumers." (Doc. 31 at PAGEID 230).

In the amended complaint's "Introduction" section, plaintiffs allege they "have a significant probability of future harm because of the ongoing, highly technical, and not readily apparent horsepower misrepresentations when purchasing future fitness equipment." (Doc. 31 at PAGEID 201). However, to qualify as a class member, a consumer must already have purchased one of the Sole treadmills at issue. By virtue of this putative class action, class members will be informed of the allegedly inflated CHP representations and are, therefore, unlikely to overpay in the event of a future treadmill purchase. In addition, home use treadmills are not an item commonly purchased repeatedly. Indeed, counsel acknowledged at the hearing that plaintiffs have not offered evidence to establish the required threat of future harm. Therefore, plaintiffs'

12

MDTPA claim must be dismissed.

**C.** **Minnesota Prevention of Consumer Fraud Act ("MPCFA") (Minn. Stat. § 325F.68-70), Minnesota False Statement in Advertising Act ("MFSAA") (Minn. Stat. § 325F.67), and Minnesota Unlawful Trade Practices Act ("MUTPA") (Minn. Stat. § 325.13) (Counts 9, 10, and 11)**

Private plaintiffs alleging violations of the MPCFA, MFSAA, and MUTPA may seek remedies only through Minnesota's private attorney general statute. *Gisairo v. Lenovo*, ___ F. Supp. 3d ___, 2021 WL 352437 (D. Minn. Feb. 2, 2021) (citing Minn. Stat. § 8.31, subdiv. 1 and 3a); *Select Comfort Corp. v. Tempur Sealy Int'l, Inc.*, 11 F. Supp. 3d 933 (D. Minn. 2014). "A plaintiff may use the Private AG Statute to pursue civil remedies only if the plaintiff can demonstrate that the action serves a 'public benefit.'" *Gisairo*, 2021 WL 352437, at *4. The public benefit requirement is "not onerous," but "it is a necessary element of a plaintiff's cause of action." *Id.* (quoting *Select Comfort*, 11 F. Supp. 3d at 937). "Generally, a public benefit is found 'when the plaintiff seeks relief primarily aimed at altering the defendant's conduct (usually, but not always, through an injunction) rather than seeking remedies for past wrongs (typically through damages).'" *Id.* (quoting *Select Comfort*, 11 F. Supp. 3d at 938). Even where a plaintiff seeks to enjoin continued false advertising, no public benefit will be found if monetary damages are the primary relief sought. *Id.* at *5 (quoting *Select Comfort*, 11 F. Supp. 3d at 939 ("even though plaintiff sought to 'enjoin Defendant from continuing its false advertising and marketing,' the relief sought was not primarily aimed at altering the defendant's conduct because the complaint requested 'payment of damages . . . all profits and/or ill-gotten gains'") (internal quotation marks omitted)).

Like the plaintiffs in *Select Comfort* and *Gisairo*, plaintiffs in this case primarily seek remedies for alleged past wrongs. Although plaintiffs here ask the Court to enjoin Sole "from future misrepresentations regarding the horsepower of its treadmills," they more prominently

seek "Damages, including compensatory, exemplary, and statutory," "restitution to . . . require SOLE to disgorge its ill-gotten gains," "punitive damages in an amount to be determined at trial," "reasonable attorneys' fees and the costs and disbursements of this suit incurred herein," and "pre-judgment and post-judgment interest at the highest legal rate to the extent provided by law." (Doc. 31 at PAGEID 243-44). In this case, plaintiffs' focus is on monetary awards. Thus, plaintiffs fail to establish the public benefit required to seek remedies through Minnesota's private attorney general statute, and plaintiffs' claims under the MPCFA, MUTPA, and MFSAA must be dismissed.

### D. Negligent Misrepresentation (Count 12)

During the hearing on this matter, the Court inquired whether the economic loss doctrine bars the negligent misrepresentation claim for the putative Minnesota class. Subsequently, the Court has been advised that plaintiffs voluntarily withdraw their negligent misrepresentation claim.

## IV. Class Certification

Class actions, governed by Federal Rule of Civil Procedure 23, are "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)). Rule 23 provides:

> One or more members of a class may sue . . . as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). "[A]lthough not explicitly stated in Rule 23 'the class definition must be sufficiently definite so that it is administratively feasible for the court to determine whether a

particular individual is a member of the proposed class.'" *Lyngaas v. Ag*, 992 F.3d 412, 428 (6th Cir. 2021) (quoting *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537-38 (6th Cir. 2012)).

In addition to the prerequisites set forth in Rule 23(a), "a party seeking to maintain a class action must 'satisfy through evidentiary proof at least one of the provisions of Rule 23(b).'" *Lyngaas*, 992 F.3d at 428 (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013)). Plaintiffs here request certification under Rule 23(b)(3), "which requires the district court to find 'that the questions of law or fact common to class members predominate over any questions affecting only individual members' and that the class action is 'superior to other available methods' to adjudicate the controversy fairly and efficiently." *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 850-51 (6th Cir. 2013) (quoting Fed. R. Civ. P. 23(b)(3)).

A court is not required "to decide conclusively at the class-certification stage what evidence will ultimately be admissible at trial," but "the trial court must undertake a 'rigorous analysis'" to ensure Rule 23's requirements have been fulfilled. *Lyngaas*, 992 F.3d at 428 (quoting *Gen Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)). As the Sixth Circuit has instructed:

> Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.

*In re Whirlpool*, 722 F.3d at 851 (quoting *Amgen Inc. v. Conn. Retirement Plans & Trust Funds*, 568 U.S. 455, 466 (2013)). The trial court "maintains substantial discretion in determining whether to certify a class, as it possesses the inherent power to manage and control its own pending litigation." *Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 504 (6th Cir. 2015) (quoting *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 559 (6th Cir. 2007)).

A. **Rule 23(a) Requirements**

1. *Ascertainability*

"For a class to be sufficiently defined, the court must be able to resolve the question of whether class members are included or excluded from the class by reference to objective criteria." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 538 (6th Cir. 2012) (quoting MOORE'S FEDERAL PRACTICE § 23.21[3]).  Reference to fixed, geographic boundaries or injuries allegedly caused by a defendant's particular action are generally deemed sufficiently objective for class definition. *Id.* at 538-39.

Plaintiffs seek to certify separate classes defined by geographic location and Sole treadmill purchase date.  Plaintiffs offered evidence that Sole maintains customer names and contact information for those who purchased treadmills either directly from Sole or through third-party retailers Dick's Sporting Goods and Amazon.  (Doc. 38, Exh. 8).

Sole does not dispute this information, but instead contends that ascertainability fails because plaintiffs' proposed class definitions do not differentiate between aggrieved and satisfied treadmill purchasers.  (Doc. 45 at PAGEID 593-95).  However, under plaintiffs' theory of the case, every person who purchased a Sole treadmill for home use expecting 2.5 or higher CHP overpaid for their treadmill (even if they are satisfied with treadmill performance) because the treadmills are incapable of reaching such CHP in home use.  Thus, if plaintiffs' theory is ultimately successful on the merits, class members are objectively ascertainable from the known customer lists.

2. *Numerosity*

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  There is no strict numerical test for determining

16

numerosity.[5] *Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006); *In re American Med. Sys.*, 75 F.3d at 1079. However, the "sheer number of potential litigants in a class, especially if it is more than several hundred, can be the only factor needed to satisfy [numerosity]." *Bacon v. Honda of Am. Mfg., Inc.*, 370 F.3d 565, 570 (6th Cir. 2004). Only a "reasonable estimate or some evidence of the number of class members" is required. *Bentley v. Honeywell Intern., Inc.*, 223 F.R.D. 471, 480 (S.D. Ohio 2004).

"The reason for [the impracticability] requirement is obvious. Only when joinder is impracticable is there a need for a class action device." *In re American Med. Sys.*, 75 F.3d at 1079 (quoting 1 Herbert B. Newberg & Alba Conte, Newberg on Class Actions, § 3.01, at 3-4 (3d ed. 1992)). Thus, "[t]he key to determining whether certification is appropriate under Rule 23(a)(1) rests on the impracticability of joinder." *Ledford ex rel. Epperson v. Colbert*, No. 1:10-cv-706, 2012 WL 1207211, at *3 (S.D. Ohio Apr. 11, 2012) (citing *In re American Med, Sys.*, 75 F.3d at 1079). "Numerous factors play into the impracticability of joinder, including 'the size of the proposed class, geographic dispersion and financial resources of class members, and judicial economy.'" *Id.* (quoting *Prater v. Ohio Educ. Ass'n*, No. 2:04-cv-1077, 2008 WL 2566364, at *2 (S.D. Ohio June 26, 2008)).

Sole admittedly sold more than 200,000 treadmills nationally, several thousand of which were sold in Minnesota and Ohio during the relevant time periods. Thus, the numerosity requirement has been satisfied.

---

[5] While generally no strict numerical test applies, a federal class action for MMWA claims must have at least "one hundred named plaintiffs." 15 U.S.C. § 2310(d)(3)(C). Courts in this Circuit have determined that plaintiffs need not meet the MMWA's strict numerical class requirements where jurisdiction is established under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2). *Kuns v. Ford Motor Co.*, 543 F. App'x 572, 574 (6th Cir. 2013); *Chapman v. Gen. Motors LLC*, ___ F. Supp. 3d ___, 2021 WL 1286612 (E.D. Mich. 2021); *but see Floyd v. Am. Honda Motor Co., Inc.*, 966 F.3d 1027, 1035 (9th Cir. 2020) ("CAFA may not be used to evade or override the MMWA's specific numerosity requirement."). Plaintiffs here assert jurisdiction under CAFA. (Doc. 31 at PAGEID 201-02).

### 3. Commonality

Rule 23(a)(2) mandates the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "The commonality test is qualitative rather than quantitative" in that "there need be only a single issue common to all members of the class." *In re American Med. Sys.*, 75 F.3d at 1080 (internal quotation marks omitted).

> Class relief is peculiarly appropriate when the issues involved are common to the class as a whole and when they turn on questions of law applicable in the same manner to each member of the class. For in such cases, the class-action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every class member to be litigated in an economical fashion under Rule 23.

*Id.* (quoting *General Telephone Co. of Sw. v. Falcon*, 457 U.S. 147, 155 (1982) (internal citations and quotation marks omitted)). Plaintiffs must show that class members have suffered the same injury to establish the commonality requirement of Rule 23(a). *Wal-Mart*, 564 U.S. at 350. "Their claims must depend upon a common contention . . . of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* "This inquiry focuses on whether a class action will generate common answers that are likely to drive resolution of the lawsuit." *In re Whirlpool Corp.*, 722 F.3d at 852 (citing *Wal-Mart*, 564 U.S. at 350).

Plaintiffs in this case allege that Sole advertised its treadmills using false CHP ratings in online marketing materials, in the specifications that accompanied each treadmill, and on large stickers affixed to the treadmill decks and screens. (Doc. 31 at PAGEID 207-211). According to plaintiffs, all potential class members suffered the same injury – overpaying for a CHP representation that the treadmill could not achieve. (*Id.* at PAGEID 212-13). Therefore, commonality exists because Sole made the same alleged misrepresentations to all potential class members, the alleged misrepresentations caused pecuniary injury to all potential class members,

and the same evidence will establish (or not) the falsity of the representations, whether the representations were material to reasonable consumers in the market, and whether Sole knew or should have known its representations were false or misleading.  These common questions will yield common answers for the entire class which, if true, will make Sole liable to the entire class.

Sole contends that commonality fails because the named plaintiffs purchased only Sole F80 treadmills yet seek to represent purchasers of multiple treadmill models.  While Sole cites to several products liability cases in which courts found a lack of commonality for class members who purchased different products,[6] it – like the defendant in *Rikos v. Procter & Gamble Co.* – "failed to identify a single false-advertising case where a federal court has denied class certification because of a lack of commonality."  799 F.3d 497, 507 (6th Cir. 2015).

Rather than an issue of commonality, Sole's issue is one of standing.  As explained above, standing exists where the products at issue are substantially similar.  The Sole treadmills here are substantially similar.

4.  *Typicality*

Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  A claim is typical if "it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory."  *In re American Med. Sys.*, 75 F.3d at 1082 (quoting 1 Newberg, *supra*, § 3-13, at 3-76 (footnote omitted)).  The typicality prerequisite "determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct."  *Id.*  "The premise of the typicality requirement is simply

---

[6] *See, e.g., In re American Med. Sys.*, 75 F.3d 1069 (6th Cir. 1996) (no commonality where different models of penile implants lacked a common cause of prosthesis malfunction).

stated: as goes the claim of the named plaintiff, so go the claims of the class." *Sprague v. General Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998) (holding that typicality is not established where resolution of a named plaintiff's claim would not "necessarily have proved anybody else's claim").

Here, the named plaintiffs purchased treadmills allegedly misrepresented as able to deliver a CHP impossible in household use. According to plaintiffs, all purported class members overpaid for their treadmills based on the alleged higher CHP misrepresentations. If plaintiffs can prove their claims, all class members will have experienced the same alleged overpayment injury. Thus, the typicality requirement is satisfied.

### 5. *Adequacy of Representation*

Under Rule 23(a)(4), plaintiffs must demonstrate that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Sixth Circuit has "articulated two criteria for determining adequacy of representation: '1) the representative[s] must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel.'" *In re American Med. Sys.*, 75 F.3d at 1083 (quoting *Senter*, 532 F.2d at 525). "The adequate representation requirement overlaps with the typicality requirement because in the absence of typical claims, the class representative has no incentives to pursue the claims of the other class members." *Id.* In addition, in assessing the adequacy of class representation, the Court considers "whether class counsel are qualified, experienced and generally able to conduct the litigation" and "whether the class members have interests that are not antagonistic to one another." *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 757 (6th Cir. 2013) (citation omitted).

As discussed above, plaintiffs' claims are typical, and they share common interests with

putative class members. In addition, plaintiffs' attorneys have appeared in this Court many times and have substantial experience litigating class actions and other complex matters. Thus, the adequacy requirement is satisfied.

### B. Rule 23(b)(3) Requirements

Having concluded that plaintiffs have satisfied the requirements of Rule 23(a), the Court must now determine whether one of the Rule 23(b) criteria applies. Plaintiffs here seek certification under Rule 23(b)(3). To proceed as a Rule 23(b)(3) class action, the Court must find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### 1. *Predominance*

The predominance requirement is similar to but more demanding than the commonality requirement of Rule 23(a). *Zehentbauer Fam. Land, LP v. Chesapeake Expl., LLC*, 935 F.3d 496, 503 (6th Cir. 2019) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 609 (1997) and *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013)). "What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart*, 564 U.S. at 350 (emphasis and ellipsis in original) (quoting Richard A. Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U. L. Rev. 97, 132 (2009)). "[T]he key is to 'identify[ ] the substantive issues that will control the outcome,' in other words, courts should 'consider how a trial on the merits would be conducted if a class were certified.'" *Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 468 (6th Cir. 2017), *as corrected on denial of reh'g en banc* (Sept. 1, 2017) (quoting *Gene & Gene, LLC v. BioPay,*

*LLC*, 541 F.3d 318, 326 (5th Cir. 2008)); *see also In re Nat'l Prescription Opiate Litig.*, 976 F.3d 664, 674 (6th Cir. 2020).  To find that common issues predominate, plaintiffs "need not prove that every element can be established by classwide proof."  *Sandusky Wellness*, 863 F.3d at 468.

> *a.* Nationwide Class

Plaintiffs' amended complaint alleges the following claims on behalf of the nationwide class: (1) breach of express warranty (Count 1); (2) breach of express warranty under the MMWA, 15 U.S.C. § 2310 (Count 2); (3) breach of implied warranty (Count 3); (4) breach of implied warranty under the MMWA, 15 U.S.C. § 2310 (Count 4); and (5) negligent misrepresentation (Count 15).  Questions of law or fact common to class members do not predominate individual issues with regard to a nationwide class.

As this Court previously explained in a putative class action alleging inflated horsepower representations for household blenders, state laws vary dramatically on most of these claims. *Nathan v. Whirlpool Corp.*, 492 F. Supp. 3d 747 (S.D. Ohio 2020).  For example, "the laws of Maryland, Wisconsin, New York, Illinois and Ohio vary significantly as to elements of a claim of negligent misrepresentation, and Virginia does not recognize any such cause of action at all." *Id.* at 759 (citing *Hughes v. The Ester C Co.*, 317 F.R.D. 333, 352 (S.D. N.Y. 2016) (noting "significant variations between the laws of the fifty states" on negligent representation claims)).

Indeed, even the federal claim alleged "is directly dependent on the viability of an actionable warranty claim under state law."  *Id.* (citing *Temple v. Fleetwood Enter., Inc.*, 133 F. App'x 254, 268 (6th Cir. 2005).  "[C]laims under the Magnuson-Moss Act stand or fall with [the] express and implied warranty claims under state law." *Id.* (quoting *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008)).  In view of the significant legal

variations from state to state, a trial on the merits for a nationwide class here is simply untenable. *See Chapman v. Tristar Prod., Inc.*, No. 1:16-cv-1114, 2017 WL 1433259, at *6 (N.D. Ohio Apr. 24, 2017) (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1085 (6th Cir. 1996) ("[W]hen 'more than a few of the laws of the fifty states differ,' certification is inappropriate because 'the district judge would face an impossible task of instructing a jury on the relevant law.'")). Although plaintiffs argue that all states are governed by the Uniform Commercial Code, "Justice Ginsburg once noted, 'the Uniform Commercial Code is not Uniform,' [and] [h]er observation is apt here." *Chapman*, 2017 WL 1433259, at *6 (quoting *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1016 (D.C. Cir. 1986)) (footnote omitted).[7]

In this case, the claims are essentially state law claims. Because the law differs significantly from state to state and claim to claim, common issues do not predominate. Therefore, a nationwide class cannot be certified pursuant to Rule 23(b)(3).

    *b.* <u>Minnesota Class</u>

Plaintiffs' remaining claims on behalf of the Minnesota class include: (1) breach of express warranty pursuant to Minn. Stat. § 336.2-313 (Count 5); (2) breach of implied warranty pursuant to Minn. Stat. § 336.2-314 (Count 6); and (3) breach of warranty under the MMWA, 15 U.S.C. § 2310 (Count 7). The Court will address these claims separately.

    *i.* *Breach of Express Warranty (Minn. Stat. § 336.2-313) and Breach of*

---

[7] For example, the court in *Chapman* explained that states have enacted and judicially interpreted a U.C.C. § 2-313 breach of express warranty claim in different ways such that individualized state law reliance questions predominate the claim:

> [U.C.C. § 2-313] requires that a seller's promise must "become[ ] the basis of the bargain" to form an express warranty. The fifty states use at least three distinct approaches to this "reliance element." First, some states hold that reliance is not an element of an express warranty claim. Second, other states require specific reliance on a seller's statements as a condition of recovery. Finally, a few states hold that promises relating to goods create a rebuttable presumption of reliance in favor of a buyer.

> Complicating matters further, states in the latter two groups sometimes require individualized reliance for express warranty plaintiffs.

*Chapman*, 2017 WL 1433259, at *6-7 (footnotes omitted).

*Warranty under the MMWA (15 U.S.C. § 2310)   (Counts 5 and 7)*

To state a claim for breach of warranty under Minnesota law, plaintiffs must establish "(1) the existence of a warranty, (2) breach of the warranty, and (3) a causal link between the breach and the alleged harm." *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 267 F.R.D. 549, 562 (D. Minn. 2010), *aff'd by In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d 604 (8th Cir. 2011).  In the case at bar, plaintiffs allege that Sole affirmatively represented the CHP on treadmills offered for residential use, that the treadmills are not able to achieve the stated CHP in residential use, and that, as a result, plaintiffs overpaid for the treadmills purchased.  Thus, plaintiffs have stated a claim for breach of express warranty under Minnesota law.  As the parties recognize, the MMWA provides a federal avenue to assert state law breach of warranty claims so decisions on the state law warranty claims determine the MMWA claims as well.  *See Mayernik v. CertainTeed LLC*, 476 F. Supp. 3d 625, 631 (S.D. Ohio 2020).

As to class certification, Sole first contends, citing *Hendricks v. Callahan*, 972 F.2d 190, 193-94 (8th Cir. 1992), that individualized proof that each putative Minnesota class member relied on Sole's CHP representation in purchasing a treadmill defeats predominance on plaintiffs' breach of express warranty claim.  (Doc. 45 at PAGEID 608).  However, reliance is no longer an element of such a claim since Minnesota codified breach of express warranty involving transactions in goods, and *Hendricks* does not apply here.  *In re Zurn Pex*, 267 F.R.D. at 564 ("*Hendricks* did not involve a transaction in goods . . . § 336.2-313 replaced § 512.12 of the [Minnesota] statutes and omitted the requirement that a buyer rely on an express warranty.") (internal quotation marks omitted).

Under Minnesota law:

Express warranties by a seller are created by an "affirmation of fact or promise" relating to the goods, or a "description of the goods," if made as part of the "basis

24

> of the bargain." Minn. Stat. § 336.2–313(1). "In actual practice, affirmations of fact made by the seller about the goods during a bargain are regarded as part of the description of those goods; hence no particular reliance on such statements need be shown in order to weave them into the fabric of the agreement." *Id.*, UCC cmt. 3.

*City of Wyoming v. Procter & Gamble Co.*, 210 F. Supp. 3d 1137, 1158 (D. Minn. 2016).

In the case at bar, Sole affirmatively represented the treadmills' CHP as part of the sales process, or bargain. Therefore, under Minnesota law, plaintiffs need not demonstrate particular reliance on Sole's representations "in order to weave them into the fabric of the agreement." *Id.*

Sole next contends that the need for individualized proof to establish that plaintiffs were injured by the alleged breach of warranty defeats Rule 23(b)(3) predominance. (Doc. 45 at PAGEID 608-09). Sole mixes standing issues with predominance issues.

According to Sole, "[w]arranty claims in Minnesota do not permit a plaintiff to simply allege that a product line contains a defect, but must plausibly allege that the product <u>exhibited</u> the alleged defect." (Doc. 45 at PAGEID 608) (citing *George v. Uponor Corp.*, 988 F. Supp. 2d 1056, 1068 (D. Minn. 2013) which quotes *In re Zurn Pex*, 644 F.3d at 616)). In both *George* and *In re Zurn Pex*, the courts concluded that class action plaintiffs have standing to sue if they offer some evidence of a universal defect. *George*, 988 F. Supp. 2d at 1070 (standing would exist if plaintiffs had "alleged plausible facts indicating that every Component made by Defendants will manifest the defect"); *In re Zurn Pex*, 644 F.3d at 617 ("We conclude that the district court did not err in concluding that the claims of the dry plaintiffs are cognizable under Minnesota warranty law and that they may seek damages if they succeed in proving their claim of a universal inherent defect in breach of warranty.").

Plaintiffs here offer evidence that none of the treadmills are able to obtain the represented CHP in household use because residential outlets cannot produce sufficient power to support that CHP regardless of the speed setting, weight of the treadmill user, or any other individual

variable.  As a result, treadmill purchasers allegedly overpaid for their treadmills, according to plaintiffs' economic expert.  The determination of these issues will succeed or fail based on evidence common to the class.  For these reasons, common issues predominate pursuant to Rule 23(b)(3).

### ii.  Breach of Implied Warranty (Minn. Stat. § 336.2-314)[8] (Count 6)

Pursuant to Minn. Stat. § 336.2-314(1), "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind."  "Goods to be merchantable must be at least such as . . . conform to the promises or affirmations of fact made on the container or label if any."  Minn. Stat. § 336.2-314(2)(f).

Sole contends that most treadmill purchasers are pleased with their treadmill performance so "individualized inquiries into each members' experience with their treadmill" defeats predominance.  (Doc. 45 at PAGEID 610).  If plaintiffs alleged that the treadmills are not "fit for the ordinary purposes for which such goods are used" pursuant to subsection (2)(c) of Minn. Stat. § 336.2-314, individual proof may be required.  However, plaintiffs here allege that Sole breached subsection (2)(f) of the statute, requiring that the treadmills conform to "affirmations of fact made on the container or label if any."  According to plaintiffs, Sole consistently labeled the

---

[8] Pursuant to Minn. Stat. § 336.2-314:

(1) Unless excluded or modified (section 336.2-316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.  Under this section the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale.

(2) Goods to be merchantable must be at least such as

(a) pass without objection in the trade under the contract description; and

(b) in the case of fungible goods, are of fair average quality within the description; and

(c) are fit for the ordinary purposes for which such goods are used; and

(d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and

(e) are adequately contained, packaged, and labeled as the agreement may require; and

(f) conform to the promises or affirmations of fact made on the container or label if any.

(3) Unless excluded or modified (section 336.2-316) other implied warranties may arise from course of dealing or usage of trade.

treadmills with CHP ratings to which the treadmills did not and could not conform. Resolution of whether the treadmills conform to consistent labels will succeed or fail based on evidence common to the class. For these reasons, common issues predominate pursuant to Rule 23(b)(3).

     *c.* Ohio Classes

Plaintiffs' amended complaint alleges the following claims on behalf of the Ohio classes: (1) breach of express warranty (Count 13); and (2) violation of the Ohio Consumer Sales Practices Act, Ohio Rev. Code §1345.01 *et seq*. (Count 14). In addition, plaintiffs alleged a breach of warranty under the MMWA claim on behalf of the nationwide class (Count 2) that the Court has limited to the Ohio class.

     *i. Breach of Express Warranty (Count 13) and MMWA (Count 2)*

As it did in contesting predominance for breach of express warranty and MMWA claims for the Minnesota class, Sole contends that two issues thwart predominance for the Ohio class: (1) reliance on Sole's CHP representation in purchasing a treadmill; and (2) proof of an actual injury. (Doc. 45 at PAGEID 614-15).

As to individual reliance, Ohio—like Minnesota—relies on comments to the Uniform Commercial Code to reject the individual reliance argument where the seller makes express affirmations of fact. Specifically:

> Comment 3 indicates that UCC 2–313 is relevant to the question of whether an express warranty has been *created,* and the basis-of-the-bargain rule is not applicable to situations where written warranties are clear and express. A decisive majority of courts that have considered this issue have reached the similar conclusion that reliance is not an element in a claim for breach of an express written warranty.

*Norcold, Inc. v. Gateway Supply Co*., 798 N.E.2d 618, 623-24 (Ohio Ct. App. 2003) (footnotes omitted) (emphasis in original); *Albright v. Sherwin-Williams Co.,* No. 1:17-CV-2513, 2019 WL 5307068, at *6 (N.D. Ohio Jan. 29, 2019) (quoting U.C.C. § 2-313, cmt. 3) ("A plaintiff is not

required to plead any 'particular reliance on such statement . . . in order to weave them into the fabric of the agreement.'").

In this case, Sole made express written representations that each treadmill possessed a specific CHP.  Because Sole made express affirmations of fact, the CHP statements are woven into the fabric of the agreement and plaintiffs need not establish individualized reliance on those statements under Ohio law.

Sole next contends, relying on *Phillips v. Philip Morris Cos*., 298 F.R.D. 355 (N.D. Ohio 2014), that "whether each class member was damaged—and thereby has a cognizable claim— will require 'an individual inquiry that cannot be proven on a class-wide basis.'"  (Doc. 45 at PAGEID 615 (quoting *Phillips*, 298 F.R.D. at 365).  However, in *Rikos*, the Sixth Circuit distinguished *Phillips* because "denying class certification in a false advertising challenge to Philip Morris's claim that light cigarettes had low tar hinged on the plaintiffs' inability to prove that a common injury *could be proved*."  799 F.3d at 521 (emphasis in original).  In *Rikos*, as in this case, if the product representations are proven true "even for only certain individuals, then presumably Plaintiffs lose." *Id.* at 522.

Plaintiffs offer evidence that none of the treadmills can obtain the represented CHP in household use because residential outlets cannot produce sufficient power to support that CHP regardless of the speed setting, weight of the treadmill user, or any other individual variable.  As a result, treadmill purchasers allegedly overpaid for their treadmills, according to plaintiffs' economic expert.  The determination of these issues will succeed or fail based on evidence common to the class and not based on individual inquiries.  For these reasons, common issues predominate pursuant to Rule 23(b)(3).

      *ii.  Ohio Consumer Sales Practices Act (Ohio Rev. Code § 1345.01, et seq.) (Count 14)*

Sole correctly contends that the Ohio Consumer Sales Practices Act provides a two-year statute of limitations which cannot be tolled by the Ohio discovery rule.  (Doc. 45 at PAGEID 616).  Plaintiffs acknowledge that Sole is correct on this issue and modified the requested Ohio class to reflect the two-year limitations period on this claim.  (Doc. 52 at PAGEID 932).

      *d.* <u>Damages</u>

As described above, plaintiffs' experts, Colin Weir and Steven Gaskin, propose to use CBC analysis to determine the "price premium" treadmill purchasers allegedly paid due to Sole's CHP representations.  In response, Sole's expert, Kenneth Ugone, raises appropriate and significant challenges to plaintiffs' proposed analysis. Ugone opines that CBC analysis will measure willingness to pay rather than price premium, that there are business considerations not captured by the proposed model (i.e., supply side considerations), that the proposed analysis may omit or overemphasize important variables that drive treadmill purchases, and that CHP "is not an important attribute" in choosing a treadmill.  (Doc. 45-2 at PAGEID 702-03).  The issue currently before the Court is whether these issues preclude class certification.

Both plaintiffs' and defendant's experts have appeared in many cases to offer potential damages expertise.  (Doc. 45-2 at PAGEID 729-50 (listing Ugone's "selected litigation consulting experience"); Doc. 38-10 at PAGEID 474-85 (listing cases in which Weir testified in the last four years)).  Several courts have had the opportunity to evaluate their methodologies as applied to false advertising "price premium" putative class actions.  *See, e.g., Kurtz v. Costco Wholesale Corp.*, 818 F. App'x 57 (2d Cir. 2020); *Bailey v. Rite Aid Corp.*, 338 F.R.D. 390 (N.D. Cal. 2021); *Mannacio v. LG Elecs. U.S.A., Inc.*, No. 16-CV-1220, 2020 WL 4676285 (D. Minn. Aug. 12, 2020).  In every one of these cases, courts found that the Weir and Gaskin CBC

analysis "satisfied [plaintiffs'] obligation to demonstrate predominance." *Kurtz*, 818 F. App'x at 61 (affirming the certification of a Rule 23(b)(3) damages class for price premium paid for bathroom wipes allegedly misrepresented as "flushable"); *see also Bailey*, 338 F.R.D. at 408-09 (certifying a Rule 23(b)(3) class and applying a Weir and Gaskin CBC analysis to acetaminophen gel caps allegedly misrepresented as "rapid release"); *Mannacio*, 2020 WL 4676285, at *3-4 (denying summary judgment and motion to exclude Weir and Gaskin CBC analysis in class action alleging consumers paid price premium for televisions misrepresented as having a 120Hz or 240Hz refresh rates).

Sole contends that many consumers are fully satisfied with their treadmills and a "class should not be certified if it is apparent that it contains a great many persons who have suffered no injury." (Doc. 45 at PAGEID 619 (quoting *Phillips*, 298 F.R.D. at 365). However, under the plaintiffs' theory of the case, all plaintiffs suffered the same injury, i.e., overpayment of a price premium based on allegedly inflated CHP representations. Courts "routinely" uphold "choice-based conjoint models that are designed to measure the amount of overpayment" in "mislabeling cases where the injury suffered by consumers was in the form of an overpayment resulting from the alleged misrepresentation at issue." *Bailey*, 338 F.R.D. at 409.

Sole also contends that not all consumers place the same value on CHP in choosing a treadmill and the proposed CBC analysis measures only a consumer's willingness to pay. (Doc. 45 at PAGEID 619). "The fact that Weir's model may fail to account for other possible sources of a price premium simply means that his model may not ultimately prove [plaintiffs'] claims." *Kurtz*, 818 F. App'x at 62; *see also Bailey*, 338 F.R.D. at 410 (rejecting Rite Aid's similar contention as reflecting a "merits dispute about the scope of [its] liability [that] is not appropriate for resolution at the class certification stage") and *Mannacio*, 2020 WL 4676285, at *3-4

30

(rejecting contention that Gaskin's model omits supply-side considerations and thus cannot calculate an appropriate price premium).

As in *Kurtz*:

Defendants' central contention is that Weir's analysis either does not or cannot establish a price premium because of issues such as an incomplete dataset, flawed parameters of the regression, or business considerations not captured by the model. A factfinder may ultimately agree. But if that is the case, then the class claims will fail as a unit.

818 F. App'x at 62. Thus, like the plaintiffs in *Kurtz*, plaintiffs in this case have established that common damages issues predominate over individual issues for Rule 23(b)(3) purposes.

Unlike in *Kurtz*, however, Weir and Gaskin have not yet performed the proposed CBC analysis in this case,[9] and "cherry-picking data to artificially generate a particular result may render a model so unreliable that it is inadmissible." *Id*. The Court has not yet conducted a full *Daubert* hearing on the parties' competing experts "[b]ecause class certification must occur at 'an early practicable time after a person sues or is sued as a class representative.'" *Lyngaas*, 992 F.3d at 429 (quoting Fed. R. Civ. P. 23(c)(1)(A)). At this juncture, plaintiffs have offered expert reports sufficient to "satisfy through evidentiary proof at least one of the provisions of Rule 23(b)." *Id*. at 428 (quoting *Comcast Corp*., 569 U.S. at 33). However, this "analysis is necessarily prospective and subject to change" if evolving evidentiary issues so require. *Id.* at 429 (quoting *In re Zurn Pex*, 644 F.3d at 613).

2. *Superiority*

This inquiry focuses on whether the class action mechanism is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b). If a

---

[9] "A plaintiff is not required to actually execute a proposed conjoint analysis to show that damages are capable of determination on a class-wide basis with common proof." *Bailey*, 338 F.R.D. at 408 n. 14. *Comcast* requires only that "'damages are *capable* of measurement' on a class-wide basis." *Id*. (quoting *Comcast*, 569 U.S. at 34) (emphasis added in *Bailey*).

proposed class meets this requirement, the class action would "achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Martin v. Behr Dayton Thermal Prod. LLC*, 896 F.3d 405, 415 (6th Cir. 2018) (quoting *Amchem Prods, Inc. v. Windsor*, 521 U.S. 591, 615 (1997)). "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Amchem Prods.*, 521 U.S. at 617 (1997) (citation omitted).

In this case, the parties do not dispute that individual damages are relatively small and litigation expenses, particularly in view of the expert testimony required, are relatively large. As the Court has determined that plaintiffs have established predominance, a class action is the superior method for adjudicating this action.

## V.  Appointment of Class Counsel

The Court may appoint plaintiffs' attorneys as class counsel only if they are deemed adequate under Rule 23(g)(1) and (4). Fed. R. Civ. P. 23(g)(2). In making this determination, the Court "must consider: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv). In addition, "[c]lass counsel must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(4).

As demonstrated by the Declarations of Terence Coates and Nathan Prosser, plaintiffs' attorneys are knowledgeable in the applicable law and highly experienced in litigating class

actions and other complex matters. (Doc. 38-12; Doc. 38-13). In addition, plaintiffs' attorneys indicate that they will commit the necessary resources to adequately represent the plaintiffs and putative class members' interests in this case. (Doc. 38-12 at PAGEID 540; Doc. 38-13 at PAGEID 555). Accordingly, the Court will appoint plaintiffs' attorneys as class counsel in this matter.

## VI.  Conclusion

For the reasons set forth above, Plaintiffs' Motion for Class Certification and to Appoint Class Representatives and Class Counsel (Doc. 37) is **GRANTED IN PART AND DENIED IN PART**. Specifically, the Court orders the following:

1. Plaintiffs' Minnesota Deceptive Trade Practices Act claim (Count 8), Minnesota Prevention of Consumer Fraud Act claim (Count 9), Minnesota False Statement in Advertising Act claim (Count 10), Minnesota Unlawful Trade Practices Act claim (Count 11), and Minnesota claim for negligent misrepresentation (Count 12) are **DISMISSED**.

2. Plaintiffs' motion to certify a nationwide class is **DENIED**.

3. Plaintiffs' motion to certify is **GRANTED** as to the following classes:

**Ohio Class**: All persons in Ohio who purchased a Sole F63 (3.0 CHP), Sole F65 (3.25 CHP), Sole S77 (4.0 CHP), Sole F80 (3.5 CHP), Sole F85 (4.0 CHP), Sole TT8 (4.0 CHP), Sole F60 (2.75 CHP), Sole S73 (3.0 CHP), Sole F83 (3.25 CHP), and/or Sole TT9 (4.0 CHP) treadmill from August 30, 2015 through class certification, primarily for personal, family, or household purposes, and not for resale. **(Breach of express warranty and Magnuson-Moss Warranty Act breach of express warranty)**.

**Ohio Class**: All persons in Ohio who purchased a Sole F63 (3.0 CHP), Sole F65 (3.25 CHP), Sole S77 (4.0 CHP), Sole F80 (3.5 CHP), Sole F85 (4.0 CHP), Sole TT8 (4.0 CHP), and discontinued models Sole F60 (2.75 CHP), Sole S73 (3.0 CHP), Sole F83 (3.25 CHP), and/or Sole TT9 (4.0 CHP) treadmill from August 30, 2017 through class certification, primarily for personal, family, or household purposes, and not for resale. **(Ohio Consumer Sales Practices Act)**.

**Minnesota Class**: All persons in Minnesota who purchased a Sole F63 (3.0 CHP), Sole

F65 (3.25 CHP), Sole S77 (4.0 CHP), Sole F80 (3.5 CHP), Sole F85 (4.0 CHP), Sole TT8 (4.0 CHP), Sole F60 (2.75 CHP), Sole S73 (3.0 CHP), Sole F83 (3.25 CHP), and/or Sole TT9 (4.0 CHP) treadmill from August 30, 2015 through class certification, primarily for personal, family, or household purposes, and not for resale. **(Breach of express warranty; Magnuson-Moss Warranty Act breach of express warranty; breach of implied warranty)**.

These classes expressly exclude Sole, its employees, agents, officers, directors, legal representatives, successors, subsidiaries, parent entities, or predecessors and its employees; and judicial officers and associated court staff assigned to this case.

4.  Plaintiff Laura Bechtel is appointed class representative for the Ohio classes.

5.  Plaintiff Troy Thoennes is appointed class representative for the Minnesota class.

6.  Markovits, Stock & Demarco, LLC, and Hellmuth & Johnson, PLLC are appointed class counsel.

**IT IS SO ORDERED.**

Date:  9/11/2021

Karen L. Litkovitz
United States Magistrate Judge