UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| **LAURA BECHTEL and TROY THOENNES,**<br><br>Plaintiffs,<br><br>v.<br><br>**FITNESS EQUIPMENT SERVICES, LLC dba SOLE FITNESS**<br><br>Defendant. | Case No. 1:19-cv-00726<br><br>Judge Michael R. Barrett<br><br>**Magistrate Judge Karen L. Litkovitz** |

**PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT**

Pursuant to Fed. R. Civ. P. 23(e), Plaintiffs Laura Bechtel and Troy Thoennes ("Plaintiffs"),[1] on behalf of themselves and the Settlement Class, respectfully move this Court to enter the proposed Order (attached as **Exhibit 1**). Per Local Rule 7.3, Plaintiffs consulted with Defendant before filing this Motion and determined that this Motion is unopposed. The grounds for the Court's potential granting of this unopposed Motion are included in the accompanying Memorandum in Support of Unopposed Motion for Final Approval of Class Action Settlement.

---

[1] Capitalized terms not defined herein are as stated in the Class Action Settlement Agreement and Release ("Agreement") dated January 24, 2022 (Doc. 59-2).

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

**I.     PRELIMINARY STATEMENT**

Plaintiffs respectfully requests that the Court grant final approval of the Settlement that it preliminarily approved on February 22, 2022. Plaintiffs will not repeat at length but will summarize below the background and arguments that supported preliminary approval and now support final approval.[2] What has occurred since the grant of preliminary approval, however, is identified in more detail below and is a further demonstration of why the proposed Settlement is fair, reasonable, and adequate and should be given final approval. A dynamic and effective notice process has resulted in a substantial number of claims to date, with many more expected as the claims deadline approaches. In contrast, there have been no objections to date. All of this speaks to the strength of the settlement and supports final approval.

**II.     FACTUAL BACKGROUND**

    **A.     Litigation and Settlement**

On August 30, 2019, Class Representative Laura Bechtel filed a complaint against Defendant Fitness Equipment Services LLC, dba Sole Fitness ("Sole") alleging that Sole made misrepresentations regarding the horsepower attributes in the advertising, marketing and sale of its treadmills sold. (Doc. 1, Complaint).[3]

On December 3, 2020, Plaintiffs filed a motion for class certification. (Doc. 37, Class Certification Motion). Following briefing, the Court held a hearing on August 16, 2021. On

---

[2] The detailed procedural background, along with facts and argument supporting certification and settlement, may be found in the preliminary approval filings of this docket. *See* Doc. 59 and accompanying exhibits.

[3] On September 8, 2020, Plaintiffs filed an Amended Complaint. (Doc. 31), in part adding Class Representative Troy Thoennes.

2

September 12, 2021, the Court issued an order granting in part and denying in part Plaintiffs' motion. (Doc. 56). Plaintiffs were appointed as Class Representatives, and Markovits, Stock & DeMarco, LLC and Hellmuth & Johnson, PLLC were appointed as Class Counsel. *Id.*

In October 2021, counsel for the Parties discussed the possibility of mediation and agreed to utilize retired U.S. Magistrate Judge Denlow for mediation. Supplemental Declaration of W. B. Markovits ("Supp. Markovits Decl."), ¶ 7 (**Exhibit 2**). Judge Denlow conducted an extensive mediation process, including detailed mediation statements and "checklists," along with two joint mediation sessions as well as multiple individual sessions with the Parties. *Id*. The main mediation session was conducted on December 2, 2021 with a mediation in principle finally being reached between the Parties on January 6, 2022. *Id*.

Plaintiffs filed an unopposed motion for preliminary approval of a proposed settlement on January 28, 2022. (Doc. 59). This Court granted preliminary approval on February 22, 2022, setting in motion the notice and claims process to the Class. (Doc. 61).

      **B.**    **Notice, Claims, Inquiries, Objections, Opt-Outs**

The Court-approved notice program that was implemented by settlement administrator, The Angeion Group ("Angeion"), was particularly robust for a consumer class action. This is in part because the Court issued an order requiring third-party retailers of Sole to produce customer contact information. (Doc. 62). This Order was used to obtain customer information from Sole's major third-party retailers. Supp. Markovits Decl., ¶ 10. Class Counsel and Angeion used customer contact information from retailers and from Sole to send direct notice to 353,722 unique email addresses and 359,597 mailing addresses of the estimated 375,000 class members. Declaration of Settlement Administrator ("Earle Decl."), ¶ 5 (**Exhibit 3**).

3

In addition to direct notice, Class Counsel and Angeion implemented a broad notice program that included: a custom social media campaign; a programmatic digital banner ads campaign; a settlement website with additional information, including frequently asked questions and important case documents; and a toll-free hotline. *Id.*, ¶¶ 11-13.

The claims deadline is July 26, 2022, and there is generally a surge of claims surrounding the deadline date. *Id.*, ¶ 18. But as of June 12, 2022, Angeion has already received 44,461 claims. *Id.* This is a strong claims rate at this point in the claims period for a consumer class action of this nature. *Id.*

Class Members have also demonstrated interest in the settlement through their inquiries and use of the settlement website. Angeion's dedicated toll-free hotline for Class Members has handled 1,526 inquiries as of June 12, 2022. *Id.*, ¶ 17. Angeion has also responded to 490 email inquiries. *Id.* The settlement website – www.soletreadmillsettlement.com – has received 170,142 hits on its webpages from 83,717 individual users. *Id.*, ¶ 15.

The deadline for any objections to the Settlement or requests for exclusion is June 27, 2022 April 1, 2022. (Doc. 61). To date, there have been zero objections. *Id.*, ¶ 20.

## III.   ARGUMENT

### A. Final Class Certification for Settlement Purposes is Appropriate.

This Court preliminarily approved class certification for Settlement purposes in its February 22, 2022 Order (Doc. 61). At this juncture, final approval is appropriate.

   1. <u>The Elements of Rule 23(a) are Satisfied.</u>

For a lawsuit to be maintained as a class action under Rule 23, the plaintiffs must establish each of the four threshold requirements of Subsection (a) of the Rule, which provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is

>impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Here, all four elements are satisfied.

### a. Numerosity

Rule 23(a)(l) requires that plaintiffs demonstrate that "the class is so numerous that joinder of all members is impracticable." While no specific number of class members is required to maintain a class action, "[w]hen class size reaches substantial proportions. . . the impracticability requirement is usually satisfied by the numbers alone." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996) (citation omitted). Here, there are an estimated 375,000 Class Members, satisfying the numerosity requirement. Supp. Markovits Decl., ¶ 14.

### b. Commonality

Rule 23(a)(2) requires a showing of the existence of questions of law or fact common to the class. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011). "Their claims must depend upon a common contention of such a nature that it is capable of classwide resolution- which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. at 350. Both the majority and dissenting opinions in that case agreed that "for purposes of Rule 23(a)(2) even a single common question will do." *Id.* at 359.

In this case, there are numerous common questions of law and fact, such as whether the Treadmill horsepower claims are accurate, and whether the Class Members have actionable claims. Commonality is, therefore, satisfied.

### c. Typicality

In order to satisfy the typicality requirement of Rule 23(a)(3), the claims or defenses of the representative parties must be typical of the claims or defenses of the class. "The typicality

5

requirement ensures that the representative's interests will be aligned with those of the represented group and that the named plaintiff will also advance the interests of the class members." *Chesher v. Neyer*, 215 F.R.D. 544, 549 (S.D. Ohio 2003). "A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Id*. (citing 1 Herbert B. Newberg & Alba Conte, Newberg on Class Actions, § 3-13, at 3-76 (3d ed. 1992)); *see also Am. Med. Sys*., 75 F.3d at 1082 (same).

Typicality seeks to ensure that there are no conflicts between the class representatives' claims and the claims of the class members represented. Here, Plaintiffs' claims arise out of the same alleged conduct by Sole related to the sale and marketing of its Treadmills, in particular with regard to horsepower representations, and the same legal theories apply to all. Typicality is satisfied.

### d. Adequacy of Representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." "There are two criteria for determining this element: 1) the representatives must have common interests with the unnamed class members, and 2) it must appear that the representatives will vigorously prosecute the class action through qualified counsel." *Senter v. Gen. Motors Corp*., 532 F.2d 511, 524-25 (6th Cir. 1976).

Here, Plaintiffs are adequate because (1) they have actively participated in the case, (2) during the Class Period they purchased a Treadmill that would be covered by the Settlement, and (3) they were allegedly injured in the same manner based on the same alleged treadmill horsepower misrepresentations. Class Counsel are qualified, possessing a wealth of experience in litigating

6

complex class action lawsuits, which allowed them to negotiate an outstanding settlement for the Class. Supp. Markovits Decl. ¶ 5. The adequacy requirement is satisfied.

### 2. The Requirements of Rule 23(b)(3) are Met in the Settlement Context.

Plaintiffs seek to certify a Class under Rule 23(b)(3), which has two components: predominance and superiority. When assessing predominance and superiority, the court may consider that the class will be certified for settlement purposes only, and a showing of manageability at trial is not required. *See Amchem Prods. V. Windsor*, 521 U.S. 591, 620 (1997). With respect to predominance, the Sixth Circuit has explained that "named plaintiffs must show, and district courts must find, that questions of law or fact common to members of the class predominate over any questions that affect only individual members." *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 860 (6th Cir. 2013). With respect to superiority, the Court considers whether a class action is "superior to other methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Here, there are several common questions of law and fact that predominate over any questions that may affect individual Class Members. For example, were this case to proceed, the primary issue would be whether Defendant misrepresented the horsepower of its Treadmills, and whether Defendant is liable as a result. Common issues such as whether the Treadmills are able to obtain the represented CHP in household use, and whether purchasers overpaid as a result, will "succeed or fail based on evidence common to the class," as this Court previously noted when finding that common issues predominate. *Bechtel v. Fitness Equipment Services, LLC*, 339 F.R.D. 462, 482 (S.D. Ohio 2021).[4]

---

[4] While the class previously certified by this Court was narrower than the nationwide settlement class proposed for final approval, the findings with regard to predominance and superiority do not differ.

The second prong of Rule 23(b)(3) — that a class action is superior to other available methods for the fair and efficient adjudication of the controversy — is also readily satisfied. *See* Fed. R. Civ. P. 23(b)(3). The settlement would relieve the substantial judicial burdens that would be caused by repeated adjudications in individual trials against Sole. *See Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 545 (6th Cir. 2012); *see also Bechtel*, 339 F.R.D. at 485 (noting that "a class action is the superior method for adjudicating" this treadmill CHP misrepresentation class action).

### B. The Notice Program Preliminary Approved by the Court Was the Best Notice Practicable Under the Circumstances, and Was Successful

In class actions certified under Federal Rule of Civil Procedure 23(b)(3), notice must meet the requirements of Rule 23(c)(2). The latter rule requires that notice to the class be the "best notice that is practicable under the circumstances." Rule 23(c)(2). *See In re Auto. Parts Antitrust Litig.*, No. 12-CV-00103, 2016 WL 8200511, at *10 (E.D. Mich. Aug. 9, 2016) (program satisfied Rule 23 and due process). The Court must consider the mode of dissemination and the content of the notice to assess whether such notice was sufficient. *See* Federal Judicial Center, Manual for Complex Litig. § 21.312 (4th Ed. 2004). There is no statutory or due-process requirement that all class members receive actual notice by mail or other means; rather, "individual notice must be provided to those class members who are identifiable through reasonable effort." *Eisen v. Carlisle & Jacqueline,* 417 U.S. 156, 175 (1974). Rule 23(e) gives the Court "virtually complete" discretion as to the manner of service of settlement notice. *See Franks v. Kroger Co.,* 649 F.2d 1216, 1223-23 (6th Cir. 1981); *Vassalle v. Midland Funding, LLC*, No. 3:11-CV-00096, 2014 WL 5162380, at *11 (N.D. Ohio Oct. 14, 2014), *aff'd sub nom. Pelzer v. Vassalle*, 655 F. App'x 352 (6th Cir. 2016).

Class Counsel worked closely with the Settlement Administrator to develop and implement the notice program preliminarily approved by the Court. Supp. Markovits Dec., ¶ 12. The notice process was substantially improved through direct notice, made possible in large part by this Court's order requiring third-party retailers to provide customer contact information. (Doc. 62). Using customer contact information provided by Sole and its major third-party retailers, the Settlement Administrator was able to provide direct notice to 359,597 Class Members regular U.S. mail and 353,5722 via email. Earle Dec., ¶ 5. This process included removing duplicates and updating information, including through use of the USPS's National Change of Address database and skip-tracing. *Id*. Any email notice that was undelivered was sent via regular mail to those Class Members with a mailing address. *Id*., ¶¶ 5-10. Any mail notice that was returned with a forwarding address was remailed to the appropriate address. *Id*., ¶¶ 8-10.

In addition to the direct notice plan, the Settlement Administrator also implemented an internet and social media campaign that included the establishment of a settlement website (www.soletreadmillsettlement.com) and targeted Facebook ads using the available Class Member data. *Id*., ¶¶ 11-15. The website received 170-142 directed clicks and 83,717 overall visits as of June 12, 2022. *Id*., ¶ 15. The targeted ads reached delivered 1,757,663 impressions. *Id*., ¶ 12.

The Settlement Administrator estimates that between direct notice and other forms of notice, the notice program reached over 95% of Class Members. This exceeds the 70-95% notice guideline that is often cited as meeting the requirements of Rule 23(c)(2)(B) and due process. Federal Judicial Center, Judges' Class Action Case: 3:92-cv-00333-WHR Doc #: 611-1 Filed: Mar. 28, 2022, Page: 9 of 19 PAGEID #: 7027: 10 Notice and Claims Process Checklist and Plain Language Guide, at 3 (2010), www.fjc.gov/sites/default /files/ 2012/NotCheck.pdf.

9

The notice program provided Class Members with a clear and concise statement of their rights under Rule 23(c)(2)(B). (Doc. 60). The notices directed Class Members to the settlement website or a toll-free number for additional information regarding how they could opt out of or object to the settlement. *Id*. The notice program meets the structures of Rule 23 and due process and should be approved by the Court.

### C. The Settlement Agreement Merits Final Approval

Under Rule 23(e), the Court may approve this Settlement if it determines that it is "fair, reasonable and adequate." The determination of whether to grant final approval for the Settlement is left to the sound discretion of the Court. *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 778 (N.D. Ohio 2010) (citing *Bailey v. Great Lakes Canning, Inc.*, 908 F.2d 38, 42 (6th Cir. 1990)). The Sixth Circuit has identified the following factors when considering whether to finally approve a class action settlement: "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 754 (6th Cir. 2013).

The 2018 amendments to Rule 23(e) also contain specific factors for federal courts to consider in determining whether a class action settlement is fair, reasonable and adequate. *See* Fed. R. Civ. P. 23(e)(2). These factors include:

- A. Whether the class representatives and class counsel have adequately represented the class;

- B. Whether the proposal was negotiated at arm's length;

- C. Whether the relief provided for the class is adequate, taking into account: (i) the costs, risk, and delay of trial and appeal: (ii) the effectiveness of any proposed method of distributing relief to the class including the method of processing class members

>> claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> D. Whether the proposal treads class members equitably.

*Id.* These amendments are not intended to displace the factors set forth in case law "but rather focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *Id.* at *Advisory Committee's Note to 2018 amendment*. Courts in this Circuit consider both sets of factors when assessing the reasonableness of a settlement and enjoy "wide discretion in assessing the weight and applicability of these factors." *Doe v. Ohio*, No. 2:91-cv-464, 2020 WL 728276, at * 3 (S.D. Ohio Feb. 12, 2020). All of the case law and 23(e) factors weigh in favor of granting final approval.

1. The Settlement resulted from mediated, arm's-length negotiations without any risk or evidence of fraud or collusion.

Settlements resulting from arm's length negotiations conducted by court-approved counsel are presumptively reasonable. *See* 1 Herbert B. Newberg & Alba Conte, Newberg on Class Actions, § 11.41 at 90 (4th Ed. 2002). Courts presume the absence of fraud or collusion in settlement negotiations unless there is evidence to the contrary. *In re Telectronics Pacing Sys.*, 137 F. Supp. 2d 985, 1106 (S.D. Ohio 2001). Here, there is no such evidence.

This Settlement was the result of extensive, contentious, arm's-length negotiations between counsel with many decades of experience in handling complex, class action litigation. Negotiations were arduous and lengthy, stretching over months under the close supervision of retired U.S. Magistrate Judge Denlow. Supp. Markovits Decl., ¶ 7. Judge Denlow's participation

in the Parties' negotiations alone establishes the lack of fraud or collusion in this case.[5] This factor strongly supports granting final approval.

### 2. The complexity, expense, and likely duration of the litigation warrant final approval of the Settlement.

"Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *Brent v. Midland Funding, LLC*, No. 3:11 CV 1332, 2011 WL 3862363, at *16 (N.D. Ohio Sept. 1, 2011) (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000)). "Thus, '[i]n most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.'" *Id.* (quoting 4 Herbert B. Newberg & Alba Conte, Newberg on Class Actions § 11.50 (4th ed. 2002)).[6] This case is no different in that it is a consumer class action and a settlement at this stage of the case will avoid the risk of "costs, delays, and multitude of other problems associated" with class action cases.

In the absence of settlement, Plaintiffs' action would remain subject to further time-consuming and costly expert-intensive litigation. Even if Plaintiffs action survived summary judgment, trial and appeal, it could take many years and involve substantial expense for all Parties.

---

[5] *See, e.g., Moran v. Wunderlich*, No. 3:05CV073, 2007 WL 3005235, at *2 (S.D. Ohio Oct. 12, 2007) (noting that settlement negotiations conducted by a federal magistrate judge were arm's-length and without the risk of fraud or collusion); *In re Regions Morgan Keegan Secs.*, Nos. 2:09-2209SMH V, 2:07-cv-02830-SHM-dkv, 2013 WL 12110279, at *5 (W.D. Tenn. Aug. 6, 2013) (noting that "[t]he parties protected against the risk of fraud or collusion by using a highly qualified and experienced independent mediator during settlement negotiations.").

[6] *See also Amos v. PPG Indus., Inc.*, No. 2:05-cv-70, 2015 WL 4881459, at *1 (S.D. Ohio Aug. 13, 2015) ("In general, most class actions are inherently complex, and settlement avoids the costs, delays, and multitude of other problems associated with them.") (internal citations and quotations omitted); *Miracle v. Bullitt Cnty., Ky.*, No. CIV.A. 05-130-C, 2008 WL 3850477, at *6 (W.D. Ky. Aug. 15, 2008) (The "uncertainty of the outcome of the litigation makes it more reasonable for the plaintiffs to accept the settlement offer from the defendant").

The uncertainty of continued litigation stands in stark contrast to the immediate relief offered by this Settlement. Therefore, the Settlement provides Settlement Class Members with real benefits now without having to endure the risks, duration, and expense that would surely follow if this litigation were to continue. *See Bert v. AK Steel Corp.*, No. 1:02-cv-467, 2008 WL 4693747, at *2 (S.D. Ohio Oct. 23, 2008) ("The Court has no doubt that the required trials or hearings would have been time consuming, and that a complete resolution of the case would not be reached for several more years. This factor clearly weighs in favor of the proposed settlement.").

### 3. Sufficient discovery was conducted in this case.

The Parties have already engaged in sufficient discovery, formal and informal, of parties and experts in both motor horsepower and conjoint analysis damages. Supp. Markovits Dec., ¶ 4. This factor also lends support for granting final approval of the Settlement.

### 4. The likelihood of success balanced against the amount and form of relief offered by the settlement weigh in favor of approving the settlement.

The Sixth Circuit has identified the likelihood of success on the merits as the most important of all the factors a district court must evaluate in assessing the fairness of a class action settlement. *Poplar Creek Dev. Co. v. Chesapeake Appalachia, LLC*, 636 F.3d 235, 245 (6th Cir. 2011). A district court must weigh the likelihood that the class ultimately will prevail "against the amount and form of the relief offered in the settlement." *Carson v Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981); *see also In re Gen. Tire & Rubber*, 726 F.2d 1075, 1086 (6th Cir. 1984); *UAW v. Gen. Motors, Corp.*, 497 F.3d 615, 631 (6th Cir. 2007).

Although Plaintiffs remains confident in their claims against Sole, they recognize the substantial risks involved in establishing liability and damages in this case. From the outset of this litigation, Defendant has consistently maintained that the allegations in this action are meritless. The proposed settlement provides nationwide relief, while the certification granted prior to the

proposed settlement was narrower. Furthermore, there is a risk that a jury might award little or nothing in the way of damages. And even if Plaintiffs prevailed through summary judgment and trial, Plaintiffs would still face the potential for prolonged appeals to the Sixth Circuit.

By contrast, the Settlement offers immediate, significant, and substantial nationwide relief to all Class Members who submit a claim. Generally, Class Members who purchased a Treadmill from August 30, 2015 through February 22, 2022 (for Ohio and Minnesota purchasers) or from December 2, 2017 through February 22, 2022 (for all other purchasers within the United States and its territories) may receive: 1) a *pro rata* payment from a Common Fund of Three Million Six Hundred and Fifty Thousand Dollars ($3,650,000.00), after deductions for Attorney Fees and Expenses, administration and Notice Expenses, and Service Awards, if any; and 2) a transferable $100 Sole Gift Card that can be used toward the purchase of any product from Sole's website (www.soletreadmills.com), subject to certain restrictions. At the current claims rate each Class Member would receive a payment roughly Fifty Dollars ($50.00) from the Common Fund. Supp. Markovits Decl., ¶ 8. In addition, Defendant has agreed to make significant changes to its sales and marketing of its Treadmills with respect to horsepower claims—the issue central to the Lawsuit. Defendant will cease using the terminology "Continuous Horsepower" or "CHP" to market or sell its Treadmills, will not make the claim that its horsepower representations reflect the maximum output a treadmill motor will actually sustain under variable conditions, will not use the term "horsepower" with respect to the input to a motor, and with respect to future horsepower claims will in conjunction with such claims provide information proximate to the claim to inform customers about the basis for the claim.

The Settlement delivers real value to Class Members. Under any analysis, the relief afforded by this Settlement is fair and reasonable, especially when weighed against the anticipated

14

cost, prolonged nature, and uncertain outcome of continued litigation. Thus, this factor too weighs in favor of granting final approval.

> 5. <u>The fact that both Plaintiffs' and Defendant's counsel, as well as Plaintiffs, recommend approval of the Settlement strongly indicates that the Settlement is fair, reasonable, and adequate.</u>

The Sixth Circuit has observed that, when experienced counsel immersed in the legal and factual issues comprising a class action recommend approval of their class settlement, their recommendations are entitled to deference. *See Williams v. Vukovich*, 720 F.2d 909, 922 (6th Cir. 1983) (a district court "should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs" and that deference "should correspond to the amount of discovery completed and the character of the evidence uncovered"). Likewise, courts in the Sixth Circuit defer to the recommendations made by class representatives who, like Plaintiffs here, were intimately involved in the litigation and support the Settlement. *Gascho v. Global Fitness Holdings, LLC*, No. 2:11-cv-436, 2014 WL 1350509, at *18 (S.D. Ohio Apr. 4, 2014) ("Not insignificantly, the Class Representatives have also approved the Settlement Agreement").

Class Counsel and Plaintiffs support this Settlement because it provides Class Members with immediate and substantial benefits that will directly address the issue of what they believe to be horsepower misrepresentations on the part of Sole. Supp. Markovits Decl., ¶¶ 8, 35; Declaration of Laura Bechtel in Support of Final Approval of Class Action Settlement, Attorneys' Fees, Expenses, and Class Representatives' Incentive Awards, ¶¶ 10-11 (**Exhibit 4**); Declaration of Troy Thoennes in Support of Final Approval of Class Action Settlement, Attorneys' Fees, Expenses, and Class Representatives' Incentive Awards, ¶¶ 10-11 (**Exhibit 5**). Defendant is also supportive of the Settlement, which was reached after over two years of litigation and thorough settlement negotiations. As the result of discovery conducted and extensive settlement negotiations, the

Parties are in a position to fully analyze the strengths and weaknesses of their respective cases and determine that the Settlement at this stage of the litigation is appropriate. Accordingly, the informed recommendations of the Parties and their experienced counsel weigh in favor a granting final approval.

6. <u>The reactions of Class Members to date supports the Settlement.</u>

The deadline for Class Members to object or opt out of the Settlement is June 27, 2022. Accordingly, Plaintiffs cannot yet fully assess the Class Members' reaction to the Settlement. After the deadline passes and before the Final Approval Hearing on September 21, 2022, Class Counsel will file a supplemental notice summarizing the number of claims, objections, and opt-outs received. As discussed above, however, to date the reaction of the absent Class Members is positive: there is a strong claims rate, with zero objections. This further supports final approval.

7. <u>This Settlement serves the public interest.</u>

"[T]he law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *Brent*, 2011 WL 3862363, at *12 (quoting 4 Herbert Newberg & Alba Conte, Newberg on Class Actions, § 11.41 (4th ed. 2002)). *See also In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003) ("There is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources.").[7] This Settlement serves the public's interest by ending already protracted litigation and freeing up judicial resources. *See In re Telectronics*, 137 F. Supp. 2d at 1025; *see*

---

[7] *See also In re Nationwide Fin. Servs. Litig.*, No. 2:08–cv–00249, 2009 WL 8747486, at *8 (S.D. Ohio Aug. 18, 2009) ("[T]here is certainly a public interest in settlement of disputed claims that require substantial federal judicial resources to supervise and resolve."); *Hainey v. Parrott*, 617 F. Supp. 2d 668, 679 (S.D. Ohio 2007) ("noting that "[p]ublic policy generally favors settlement of class action lawsuits.").

*also Hainey*, 617 F. Supp. 2d at 679; *Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 248 (S.D. Ohio 1991) (noting that the settlement of a class action lawsuit served the public interest because it "avoid[ed] a time-consuming and expensive trial" and "eliminate[d] the possibility of any time-consuming and expensive appeals.").

Particularly in light of the immediate benefits that the Settlement provides to the Class Members, and the fact that this Settlement will avoid further discovery and expensive motion practice, this "overriding public interest" would be well served by approval of this Settlement.

### 8. The Other Rule 23(e) Factors Support the Settlement.

To the extent not addressed above, the Rule 23(e) factors support the Settlement. The method of distributing relief was chosen to make the claims process as easy as possible. Rule 23(e)(2)(C)(ii). For Class Members whose purchase information was obtainable, claim forms were prepopulated with the information necessary to make a claim, a claim can easily be made electronically, and payments can be made by check of electronically. Earle Decl., ¶ 14. A unique individual code to obtain the $100 Sole Gift Card will be made available electronically. *Id*.

The attorneys' fees of one third of the common fund are, as more fully set forth in the contemporaneously filed motion, well within the range of fees for a case of this nature and will not be paid until the Effective Date. Supp. Markovits Decl., ¶¶ 23. Rule 23(e)(2)(C)(iii).

There is no undisclosed agreement made in connection with the Settlement. Supp. Markovits Decl., ¶ 7; Rule 23(e)(2)(C)(iv).

All class members are treated equitably relative to each other—they all have the opportunity both for a pro rata payment of money and a Sole Gift Card. Supp. Markovits Decl., ¶¶ 15, 17; Rule 23(e)(2)(D).

In total, all of the factors to be considerable when determining whether to grant final approval weigh in favor of a finding that the Settlement is fair, reasonable, and adequate.

## IV. CONCLUSION

Because the proposed Settlement is fair, adequate, and reasonable, Plaintiffs respectfully request that the Court grant final approval and enter the proposed Order attached as **Exhibit 1**.

Respectfully submitted,

*/s/ W.B. Markovits*
W.B. Markovits (0018514)
Terence R. Coates (0085579)
Justin C. Walker (0080001)
MARKOVITS, STOCK & DEMARCO, LLC
119 E. Court Street, Suite 530
Cincinnati, OH 45202
Phone: (513) 651-3700
Fax: (513) 665-0219
*bmarkovits@msdlegal.com*
tcoates@msdlegal.com
*jwalker@msdlegal.com*

Nathan D. Prosser (*pro hac vice*)
HELLMUTH & JOHNSON, PLLC
8050 West 78th Street
Edina, MN 55439
Telephone: (952) 941-4005
Fax: (952) 941-2337
*nprosser@hjlawfirm.com*

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on June 13, 2022 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ *W.B. Markovits*
W. B. Markovits (0018514)
