# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| **LAURA BECHTEL and TROY THOENNES,**<br><br>Plaintiffs,<br><br>v.<br><br>**FITNESS EQUIPMENT SERVICES, LLC dba SOLE FITNESS**<br><br>Defendant. | Case No. 1:19-cv-00726<br><br>Judge Michael R. Barrett<br><br>**Magistrate Judge Karen L. Litkovitz** |

## PLAINTIFFS' UNOPPOSED REPLY MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Plaintiffs and Class Counsel file this memorandum in accordance with the Settlement Agreement (Doc. 59-2, PageID 1290), to update the Court regarding claims, objections and opt outs and to respond to objections prior to the fairness hearing scheduled for September 21, 2022.

### *Update on Claims, Objections and Opt Outs*

As of the filing for final approval on June 13, 2022, there were 44,461 claims. Doc. 64, PageID 1409. Following the claims deadline of July 26, 2022, that number rose to 59,669 timely claims (with an additional 113 claims after the deadline date. Supplemental Declaration of Denise Earle ("Supp. Earle Dec."), ¶ 3. Those claims are still in the process of being validated. *Id*.

There were no objections from Class Members before Plaintiffs filed for final approval and attorneys' fees, expenses and service awards. (Docs. 64, 65). But the objection deadline of June 27, 2022 had not yet passed, and two objections have since been filed.

The number of opt outs received prior to the June 27, 2022 deadline was 128. Supp. Earle Dec., ¶ 4.

The claims rate of approximately 17% is strong for a consumer class action, suggesting the reasonableness of the Settlement. *See Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269, 276 (6th Cir. 2016) (noting that class action consumer claim rates "generally range from 1 to 12 percent"); *Rael v. Children's Place, Inc.*, No. 3:16-cv-00370-GPC-LL, 2020 WL 434482, at *9 (S.D. Cal. Jan. 28, 2020) ("[C]onsumer class actions tend to result in claims rates in the low single digits."); *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 329 n.60 (3d Cir. 2011) (*en banc*) (noting that the claims rates do not normally exceed 7% "even with the most extensive notice campaigns."): *see also* Fed. Trade Comm'n, *Administration of Settlements in* CONSUMERS AND CLASS ACTIONS: A RETROSPECTIVE AND ANALYSIS OF SETTLEMENT CAMPAIGNS 11 (2019) (finding the weighted mean claims rate was 4%). *See also* Supp. Earle Dec., ¶ 3 (claims rate of 17% is higher than normal for a consumer class action).

Plaintiffs address each of the two objections below (along with a Class Member inquiry). Plaintiffs would generally note, however, that out of a class estimated at 375,000, the fact that there have only been two objections is itself evidence that the Settlement is fair, reasonable and adequate and should be finally approved. *See In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 527 (E.D. Mich. 2003) ("A certain number of opt-outs and objections are to be expected in a class action. If only a small number are received, that fact can be viewed as indicative of the adequacy of the settlement."). In *Cardizem*, the fact that there were only two objections with a class similar in size to the present supported approval. *Id*.

The number of opt outs is similarly unremarkable in a class action of this nature. *Id*., (noting consumer opt outs less than 1% of the number of consumer claimants).

The proposed Settlement was reached through a hard-fought arms-length negotiation process and overseen by retired Magistrate Judge Morton Denlow. It offers three distinct class

benefits to Class Members, including: 1) a $3.65 million non-reversionary common fund; 2) a supplemental $100 gift card; and 3) injunctive relief. The $100 gift card settlement benefit was negotiated as an additional benefit for Class Members based on Class Counsel's experience with other treadmill CHP class action settlements, namely *Walker v. Nautilus, Inc.*, No. 2-20-cv-3414 (S.D. Ohio; Judge Sargus). Supplemental Declaration of W.B. Markovits ("Supp. Markovits Dec."), ¶ 2. In *Nautilus*, Class Counsel was able to negotiate a complimentary one-year subscription to the JRNY interactive fitness app in addition to the $4.25 million common fund. *Id*. Based on that experience, Class Counsel pushed for a similar settlement benefit that would be in addition to the $3.65 million common fund; a subscription-type benefit was unavailable, so the transferable gift card was negotiated. *Id*.

### *Inquiries and Objections from Class Members*

On June 16, 2022, William MacDonald contacted the Court with an inquiry. (Doc. 66). On June 21, 2022, Andrii Tserkus filed an objection to the proposed Settlement. (Doc. 67). And on June 27, 2022, Jason D. Winter filed an objection to the Settlement (Doc. 68), which was initially rejected for non-compliance with local rules (Doc. 69) and subsequently refiled on June 28, 2022 (Doc. 70). These inquiries and objections are addressed in turn.

### *William MacDonald (Doc. 66)*

Mr. MacDonald contacted the Court on June 16, 2022, asking to be "added on" to the lawsuit with Plaintiffs Bechtel and Thoennes. (Doc. 66). On that same day, as instructed by the Court, Class Counsel contacted Mr. MacDonald. Supp. Markovits Dec., ¶ 3. Class Counsel explained that it was too late to seek an amendment adding Mr. MacDonald as a named plaintiff, and was unnecessary inasmuch as if the Settlement is finally approved he could receive the settlement benefits along with every other Class Member if he submitted a valid claim. *Id*. Class

Counsel directed Mr. MacDonald to the settlement website where he could make a claim and further indicated that Class Counsel would be happy to speak with Mr. MacDonald further if he had any questions. *Id*. Mr. MacDonald responded with thanks, and Class Counsel has heard nothing further from Mr. MacDonald. *Id.*

### *Andrii Tserkus (Doc. 67)*

The Court filed Mr. Tserkus's objection letter, dated June 16, 2022, on June 21, 2022. The bases of the objection are that: a) the monetary reimbursement is "extremely low;" b) the gift card is "not usable at all;" c) a proper settlement is to increase the Common Fund to $36-$144 million dollars. (Doc. 67).

First, it bears noting that Mr. Tserkus is from Tomball, Texas. He would therefore be outside of the Minnesota and Ohio classes that were certified by the Court following class certification. (Doc. 56, PageID 1229-30). Without the broader, nationwide class achieved by Class Counsel for settlement, Mr. Tserkus would receive nothing.

Second, Mr. Tserkus states he purchased a Sole F63 3.0 HP treadmill for $999.99, and that had he known he could not get more than 2.41 HP he would have purchased a 2.5 HP treadmill, such as a Horizon T101 treadmill that costs approximately $300 less. (Doc. 67, PageID # 1528). He suggests that this means he was damaged by $300. *Id*. But this mistakenly assumes that the only difference between the Sole F63 and the Horizon T101 is the stated horsepower. And that simply highlights one of the difficulties faced by Plaintiffs, because while it is true that as horsepower increased for Sole treadmills and other models price generally increased as well, as price increased other attributes tended to change – such as an increase in speed, incline, running deck size, frame strength, or display size or type. Supp. Markovits Dec., ¶ 4. One of the challenges in determining damages, as forcefully asserted by Defendant and its expert, would be separating

out the price increase related solely to horsepower. *See*, *e.g.*, Declaration of Keith R. Ugone, Ph.D, Doc. 45-2, ¶¶ 11, 47-48.

Third, Mr. Tserkus asserts the $100 gift card available to each claimant is "not usable at all" because Sole products are just treadmill-related purchasing, "which almost never happens." Doc. 67 at PageID 1528. But this ignores two things: 1) the gift card can be used to purchase a treadmill exercise mat from Sole valued at $99.99, which can either be used or resold; and 2) the gift card is freely transferable, meaning that while a particular claimant may not be ready to use it to purchase a Sole treadmill, it can be sold to someone who is in that market. While there would no doubt be a discount for any gift card sold, e.g., on eBay, that discount would in all likelihood not be so great as to reduce the value of the gift card to the $10 asserted by Mr. Tserkus. Supp. Markovits Dec., ¶ 5. Moreover, the $100 gift card is merely a supplemental class benefit in addition to the $3.65 million common fund. *Id*.

Fourth, while Class Counsel too would have preferred a Common Fund of $36-$144 million, as suggested by Mr. Tserkus, that was simply not possible in the settlement context and it: a) ignores the substantial risk in proving damages, given that the treadmills in question were not defective (as Defendant repeatedly noted) and performed adequately; and b) ignores the problem of collectability – Class Counsel had to take into account the ability of Sole to pay any judgment. Supp. Markovits Dec., ¶ 4.

Finally, because Mr. Tserkus generally alleges that the settlement amount here is too low (*i.e.*, that the Common Fund must be $36-$144 million), his procedural remedy under a class action case is to opt out of the settlement and potentially pursue the case on an individual basis. *See Rosado v Ebay, Inc*., No. C 10-3118 SBA, 2016 WL 3401987, at * (N.D. Cal. June 21, 2016) ("If the objector believes that he has suffered damages that are significantly higher than the typical

class member he should opt out of the class and separately pursue his claims against eBay."); *Ryder v. Wells Fargo Bank, NA*, No. 1:19-CV-638, 2022 WL 223570, at *2 (S.D. Ohio Jan. 25, 2022) (noting, in part, that the "objection is overruled because she had the ability to opt out of the Settlement if she believed she should receive a higher individual payment from Wells Fargo than that made available under the Settlement"). Like all other Class Members, Mr. Tserkus had the opportunity and the right to opt out of this Settlement if he believed the benefits provided were deficient. Instead, he chose to file an objection that, if sustained, would have the severely prejudicial impact of preventing over 50,000 Class Members from redeeming their desired Settlement benefits.

Given the risks involved in continued litigation, Plaintiffs and Class Counsel believe that benefits including a cash payment of approximately $33.64, in addition to a transferable $100 Sole gift card, are an exceptional result for Class Members. Supp. Earle Dec., ¶ 3 (based on current timely claims, each Class Member would receive a cash payment of $33.64; this number will likely rise as some claims will fail in the ongoing validation process).

On June 29, 2022, Class Counsel sent a letter responding to Mr. Tserkus's objection, indicating that he would be happy to speak more about the issues if that might help Mr. Tserkus's analysis. Supp. Markovits Dec., ¶ 7. Class Counsel received no response.

Mr. Tserkus's objection lacks merit and should be overruled.

### *Jason D. Winter (Doc. 68)*

Mr. Winter is a Cleveland attorney and apparent Class Member who filed an objection (Doc. 70) on June 28, 2022. The objection is unsupported and terse, stating that: a) the Common Fund is inadequate; b) the inclusion of the $100 gift card is "inadequate and defective"; c) the representation by Class Counsel was inadequate; and d) the attorney's fees represent an excessive

and undue proportion of the Common Fund. No explanation was given as to why the Common Fund was inadequate, or what an adequate Common Fund would be. Nor was there an explanation of why the representation by Class Counsel was inadequate, or why the requested fees were allegedly "excessive." Doc. 70.

Notably, although Mr. Winter is an Ohio licensed attorney, and e-signed his objection in his capacity as an attorney and a member of the Bar, he cites no case law and attaches no documentation to support his objection. Mr. Winter's objection should be overruled on that basis alone. *See Ryder*, 2022 WL 223570, at *2 (overruling objection where no evidence supporting objection presented); *Rosada*, 2016 WL 3401987, at *9 (same).

Further analyzing Mr. Winter's unsubstantiated arguments, the only elaboration he provided was with respect to the $100 gift card, asserting that to include a gift card "for the future purchase of an item that is rarely purchased more than once, and often costs ten times or greater the amount of this purported benefit, strains traditional notions of fairness and reason." Doc. 70, PageID 1548. As stated above, this ignores the fact that the gift card can be used to purchase a treadmill exercise mat, and that the card can be sold to someone who might want to use it to purchase a treadmill. And it ignores that the gift card benefit was not the only benefit, but a supplemental benefit in addition to a cash payment. Furthermore, the $100 gift card can be used to receive a discount on purchases of additional Sole fitness equipment beyond just a treadmill, including Sole Fitness ellipticals, climbers, bikes, and rowers. Supp. Markovits Dec., ¶ 9.

On June 29, 2022, Class Counsel sent a letter responding to Mr. Winter's objection, indicating that he would be happy to speak more about the issues if that might help Mr. Winter's analysis. Supp. Markovits Dec., ¶ 10. In response, Mr. Winter requested the expert reports, which

Class Counsel provided. *Id*. Mr. Winter thanked Class Counsel for the response and has not been in contact since. *Id*.

Mr. Winter's objection should be overruled.

## CONCLUSION

For the reasons set forth above and in the Unopposed Final Motion for Approval of Class Action Settlement (Doc. 64) and Unopposed Motion for Attorney Fees, Expenses, and Class Representatives' Service Awards (Doc. 65), the objections to the proposed Settlement, and Class Counsel's Fee and Expense award should be overruled, and the Settlement should be given final approval. The proposed settlement is fair, adequate and reasonable, and consistent with the public interest.

Respectfully submitted,

*/s/ W.B. Markovits*
W.B. Markovits (0018514)
Terence R. Coates (0085579)
Justin C. Walker (0080001)
MARKOVITS, STOCK & DEMARCO, LLC
119 E. Court Street, Suite 530
Cincinnati, OH 45202
Phone: (513) 651-3700
Fax: (513) 665-0219
*bmarkovits@msdlegal.com*
tcoates@msdlegal.com
*jwalker@msdlegal.com*

Nathan D. Prosser (*pro hac vice*)
HELLMUTH & JOHNSON, PLLC
8050 West 78th Street
Edina, MN 55439
Telephone: (952) 941-4005
Fax: (952) 941-2337
*nprosser@hjlawfirm.com*

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on September 9, 2022 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ *W.B. Markovits*
W. B. Markovits (0018514)